STATE OF CONNECTICUT *v.* GEORGE J. DAVIES

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.

Argued October 9, 1958—decided January 8, 1959

*Edward T. Carmody,* public defender, and *G. Bradford Palmer,* special assistant public defender, for the appellant (defendant).

*William B. Fitzgerald,* state's attorney, with whom was *Walter W. Smyth,* assistant state's attorney, for the appellee (state).

DALY, C. J.  The defendant has appealed, after a trial to a jury, from his conviction on a charge of murder in the first degree.  He assigns error in the sustaining of a demurrer to his plea in abatement and in the charge to the jury.

The defendant filed a plea in abatement alleging that the indictment accusing him of murder in the first degree was found by a grand jury; that seven of the eighteen grand jurors constituting the grand jury were attorneys at law duly qualified and admitted to the practice of law in this state and as such were also officers of the Superior Court; that article first, § 9, of the constitution of Connecticut, the fifth and fourteenth amendments to the federal constitution, and § 8747 of the General Statutes prohibit the holding of a defendant to answer for the crime of murder except upon the indictment of a legally constituted grand jury; that because of the presence of the seven attorneys the grand jury was not legally constituted; and that the indictment was contrary to law.  The state demurred to the plea on the ground (1) that it was not alleged therein that the seven attorneys at law referred to were not electors of the county of New Haven and (2) that an attorney at law and officer of the Superior Court is not disqualified from serving as a member of a grand jury by any provision of the constitution of the United States or the constitution of Connecti-

cut or by any statute of the state of Connecticut.

The defendant does not claim that any of the attorneys who were members of the grand jury were not electors of the county of New Haven, as required by § 8747, which provides that the Superior Court "may, when necessary, order a grand jury of eighteen electors of the county where said court is sitting." The only statutory qualification prescribed for grand jurors is that they be "electors of the county where said court is sitting." The disqualification "must be such as is pronounced by the common law, or by the statute, where the statute prescribes the qualifications, and such as absolutely disqualifies; as alienage, nonresidence, or the want of a freehold, where a freehold qualification is required, or that the person returned is not an elector of the county, and which would be a cause of principal challenge as distinguished from challenge to the favor arising from bias, prejudice, interest or the like." *State* v. *Hamlin,* 47 Conn. 95, 106. The oaths of attorneys and of grand jurors impaneled in court[1]

---

[1] "[General Statutes] Sec. 3576. FORMS OF OATHS. The forms of oaths shall be as follows, to wit:

. . . . .

#### FOR ATTORNEYS.

You solemnly swear that you will do no falsehood, nor consent to any to be done in court, and, if you know of any to be done, you will give information thereof to the judges, or one of them, that it may be reformed; you will not wittingly or willingly promote, sue or cause to be sued, any false or unlawful suit, or give aid, or consent, to the same; you will delay no man for lucre or malice; but will exercise the office of attorney, within the court wherein you may practice, according to the best of your learning and discretion, and with fidelity, as well to the court as to your client; so help you God.

#### FOR GRAND JURORS IMPANELED IN COURT.

You solemnly swear by the name of the ever-living God, that you will diligently inquire after, and due presentment make, of all breaches of law that shall come to your knowledge, according to your charge; the secrets of the cause, your own, and your fellows', you

clearly indicate that the obligations and duties of an attorney at law can in no way conflict with the obligations and duties of a grand juror impaneled in court.

As support for his claim that the court erred in sustaining the demurrer to his plea in abatement, the defendant relies upon three federal cases, *Glasser* v. *United States,* 315 U.S. 60, 62 S. Ct. 457, 86 L. Ed. 680; *Thiel* v. *Southern Pac. Co.,* 328 U.S. 217, 66 S. Ct. 984, 90 L. Ed. 1181; and *Ballard* v. *United States,* 329 U.S. 187, 67 S. Ct. 261, 91 L. Ed. 181. In each of these cases the court stated the basic rule to be followed in selecting the members of a petit jury in a federal court. In *Ballard* v. *United States,* supra, 192, the court said: "The gist of our ruling is contained . . . in the *Thiel* case [p. 220]: 'The American tradition of trial by jury, considered in connection with either criminal or civil proceedings, necessarily contemplates an impartial jury drawn from a cross-section of the community. . . . This does not mean, of course, that every jury must contain representatives of all the economic, social, religious, racial, political and geographical groups of the community; frequently such complete representation would be impossible. But it does mean that prospective jurors shall be selected by court officials without systematic and intentional exclusion of any of these groups. . . .'" Likewise, there must be no intentional and systematic exclusion of a group or a class from a grand jury. *Hernandez* v. *Texas,* 347 U.S. 475, 477, 74 S. Ct. 667, 98 L. Ed. 866.

---

will duly observe and keep; you will present no man from envy, hatred or malice; neither will you leave any man unpresented, from love, fear or affection, or in hope of reward; but you will present cases truly, as they come to your knowledge, according to the best of your understanding and according to law; so help you God."

The defendant does not claim that he alleged in his plea in abatement that there was an intentional and systematic exclusion of any group or class from the grand jury. His position, as stated in his brief, is "that by the intentional and systematic inclusion of this single professional group on the Grand Jury panel there has been a violation of his rights." Nothing stated in his so-called position can supplement the facts as they were, and are, set forth in his plea in abatement. Even if we construe the words contained in his plea in abatement as alleging that by the "inclusion of this single professional group on the Grand Jury panel there has been a violation of his rights," we have no power or authority to interpolate the words "intentional and systematic." The demurrer admitted only the facts alleged in the plea in abatement. The latter did not contain the words "intentional and systematic" or any other words which could possibly be construed as having a like meaning. "The [plea in abatement] contains a statement of the facts upon which the [defendant] relies. The [state] challenged by demurrer the sufficiency of the facts thus presented. The question before us is whether or not the trial court erred in [sustaining the demurrer]. Our answer to this question is one which must be controlled entirely by the information afforded by the [plea in abatement]. That information cannot be supplemented by facts which may be within our personal, but not within our judicial, knowledge, nor by facts which the parties stipulate may be accepted as true. The demurrer admits the facts averred [in the plea in abatement], and no others, and there is no way known to the law whereby other facts may be imported into the issue tendered by the demurrer, or whereby that issue can become any other than one

as to the sufficiency of the allegations of the [plea in abatement] as they are made." *Ryan* v. *Knights of Columbus,* 82 Conn. 91, 92, 72 A. 574; *Dante* v. *Dante,* 93 Conn. 160, 162, 105 A. 353.

The most that can be claimed by the defendant is that by his plea in abatement he alleged that the inclusion of the seven lawyers theoretically worked an indirect exclusion of representation from among other groups or callings. But it is not alleged in his plea that in accomplishing any such theoretical result there was an intent or purpose to discriminate against those other groups or callings. Fairness in selection has never been held to require proportional representation. *Akins* v. *Texas,* 325 U.S. 398, 403, 65 S. Ct. 1276, 89 L. Ed. 1692; 24 Am. Jur. 852, § 27. The defendant does not claim that he did not have a fair trial. The challenge made by him under the due process clause of the federal constitution must stand or fall on a showing that he had a trial so unfair as to amount to a taking of his liberty without due process of law. *Fay* v. *New York,* 332 U.S. 261, 296, 67 S. Ct. 1613, 91 L. Ed. 2043. The court did not err in sustaining the demurrer to the defendant's plea in abatement.

In his second assignment of error the defendant contends that, in charging the jury, the court failed to state correctly the test or definition of insanity or mental capacity needed to absolve one from responsibility or punishment in connection with the commission of a criminal act. The court substantially complied with the defendant's request to charge and charged the jury as follows:

". . . you may find murder in the first degree here only if you determine that the accused had mind enough and will enough to form a specific intent to choose his course after reflection and consideration,

and to form his purpose and put it into action, and mind enough and will power enough and reasoning power enough to kill Brenda Doucette and carry out that plan. If you find that at the time of committing the alleged act of killing Brenda Doucette, the accused was incapable of conceiving and carrying into execution a deliberate plan to kill or was mentally incapable of intent or premeditation, or was beyond the power of self-control, then you may not find the accused guilty of murder in the first degree. . . . Insanity is a good defense for any act amounting to crime if committed by a sane person. The law humanely absolves from responsibility a man whose mental condition does not reach the legal standard of sanity, and the law as clearly as it can defines this legal standard, and I am going to read it to you. I will read to you the standard of sanity which our law has adopted and defined, and you will note that some of the phrases which have been discussed in the court room in the development of the trial are absent from that definition. For instance, the words insanity, psychopathic, psychiatry and psychology do not appear in this definition I am about to give you. Some of the other words or phrases used by the medical experts, such as personality disorder, emotional instability and sexual perversion also do not appear in this definition. So, we are not making new law. We are applying the law of our State as it is and the legal standard of sanity or capacity to commit crime in our State is this: To be the subject of punishment, an individual must have mind and capacity, reason and understanding enough to enable him to judge of the nature, character and consequence of the act charged against him, that the act is wrong and criminal, and that the commission of it will justly and properly

expose him to penalty./ Now, that is the legal definition of capacity to commit crime. That is the standard that we are to apply in this case under the law of the State of Connecticut. Regardless of any other term that may be used or whatever other term may have been used by witnesses in discussing it, that definition which I have just read to you is the legal standard of capacity, the want of which would be excusable."

, The defendant concedes that the portions of the charge which he attacks conform to the rule approved by this court in *State* v. *Donahue,* 141 Conn. 656, 664, 109 A.2d 364, and other cases. He contends, however, that we should now adopt the rule stated in *Durham* v. *United States,* 214 F.2d 862. The defendant did not, by taking an exception to the charge or otherwise, apprise the court of his intention to attack our well-established legal standard of sanity or capacity to commit crime. Under § 153 of the Practice Book, this court is not bound to consider the claimed error, the defendant having taken no exception to the charge. We do consider it, since the defendant has been sentenced to death.

The rule stated in *Durham* v. *United States,* supra, 875, is as follows: "Whenever there is 'some evidence' that the accused suffered from a diseased or defective mental condition at the time the unlawful act was committed, the trial court must provide the jury with guides for determining whether the accused can be held criminally responsible. We do not, and indeed could not, formulate an instruction which would be either appropriate or binding in all cases. But under the rule now announced, any instruction should in some way convey to the jury the sense and substance of the following: If you the jury believe beyond a reasonable doubt that the accused was not

suffering from a diseased or defective mental condition at the time he committed the criminal act charged, you may find him guilty. If you believe he was suffering from a diseased or defective mental condition when he committed the act, but believe beyond a reasonable doubt that the act was not the product of such mental abnormality, you may find him guilty. Unless you believe beyond a reasonable doubt either that he was not suffering from a diseased or defective mental condition, or that the act was not the product of such abnormality, you must find the accused not guilty by reason of insanity. Thus your task would not be completed upon finding, if you did find, that the accused suffered from a mental disease or defect. He would still be responsible for his unlawful act if there was no causal connection between such mental abnormality and the act. These questions must be determined by you from the facts which you find to be fairly deducible from the testimony and the evidence in this case.

"The questions of fact under the test we now lay down are as capable of determination by the jury as, for example, the questions juries must determine upon a claim of total disability under a policy of insurance where the state of medical knowledge concerning the disease involved, and its effects, is obscure or in conflict. In such cases, the jury is not required to depend on arbitrarily selected 'symptoms, phases or manifestations' of the disease as criteria for determining the ultimate questions of fact upon which the claim depends. Similarly, upon a claim of criminal irresponsibility, the jury will not be required to rely on such symptoms as criteria for determining the ultimate question of fact upon which such claim depends. Testimony as to such 'symptoms, phases or manifestations,' along with other

relevant evidence, will go to the jury upon the ultimate questions of fact which it alone can finally determine. Whatever the state of psychiatry, the psychiatrist will be permitted to carry out his principal court function which, as we noted in *Holloway* v. *U. S.* [148 F.2d 665, 667] 'is to inform the jury of the character of [the accused's] mental disease [or defect].' The jury's range of inquiry will not be limited to, but may include, for example, whether an accused, who suffered from a mental disease or defect did not know the difference between right and wrong, acted under the compulsion of an irresistible impulse, or had 'been deprived of or lost the power of his will . . . .' [*State* v. *White,* 58 N.M. 324, 329, 270 P.2d 727]."

In *People* v. *Carpenter,* 11 Ill. 2d 60, 67, 142 N.E.2d 11, a first degree murder case, the Supreme Court of Illinois, in ruling that the trial court had not erred in refusing to charge in accordance with a request based upon the *Durham* case, supra, said: "In the refused instruction, the words 'disease,' 'defect,' and 'product' are left undefined, and on the whole, the instruction is vague and ambiguous. Observing this, one writer concluded that '*Durham* then puts forth, in my opinion, a legal principle beclouded by a central ambiguity, both unexplained and unsupported by its basic rationale.' (Wechsler, The Criteria of Criminal Responsibility, 22 U. of Chicago L. Rev., 367, 373). The need in this area is for more clarification, and the *Durham* instruction does not supply it. Justice Learned Hand put it this way: 'I have read the opinion that you mention, and perhaps it is all that can be said; but, frankly, it did not seem to me to give us any guidance that perceptibly would help.' Quoted in 22 U. of Chicago L. Rev. 319."

In the first degree murder case of *Flowers* v. *State,* 236 Ind. 151, 165, 139 N.E.2d 185, in declining to adopt the *Durham* rule, the court said: "How would a jury be instructed on what would be the 'product of mental disease?' Would it be the sole cause, or merely a cause, or when would a cause be too remote to be a product of a diseased mind? Should we attempt to adopt the law of torts on proximate cause? The historic function of the jury is to find the facts and apply the law as instructed by the court. . . . Such an indefinite standard as a product of mental disease or mental defect can hardly clarify a juror's mind, or do more than put the matter for his decision according to his personal sense of justice as a matter of legal right./Under the Durham test an accused could know the nature and quality of his act, know that it was wrong, have the will power to restrain his act, and yet by reason of his mental disease, develop egocentric or sadistic tendencies which could produce homicide with criminal impunity./Perhaps mental disease or defect which falls short of legal insanity should be a mitigating circumstance in all felony cases, but if so, it should be a matter of legislative enactment. When a jury may easily understand the product of any mental disease or any mental defect furnishes a legal excuse for crime, we are not presently convinced we should overrule our decisions on insanity as a defense to crime."

The rule stated in the *Durham* case, supra, has been considered and rejected also in *State* v. *Goyet,* 120 Vt. 12, 60, 132 A.2d 623; *Sauer* v. *United States,* 241 F.2d 640, 642; *State* v. *Kitchens,* 129 Mont. 331, 337, 286 P.2d 1079; *Sollars* v. *State,* 73 Nev. 248, 251, 316 P.2d 917; and *State* v. *Collins,* 50 Wash. 2d 740, 755, 314 P.2d 660. We know of no reason for adopting the rule stated in the *Durham* case. We

are satisfied that the standard of sanity or capacity to commit crime as stated by this court in *State* v. *Donahue,* 141 Conn. 656, 664, 109 A.2d 364, *State* v. *Kenyon,* 134 Conn. 43, 46, 54 A.2d 585, and *State* v. *Wade,* 96 Conn. 238, 242, 113 A. 458, is the correct one.

There is no error.

In this opinion the other judges concurred; MELLITZ, J., wished to be recorded as dissenting from the decision denying the defendant's motion for reargument.