STATE OF CONNECTICUT *v.* WILLIAM TOSTE

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued June 5—decision released August 14, 1979

*Richard Emanuel,* assistant public defender, with whom, on the brief, was *Jerrold H. Barnett,* public defender, for the appellant (defendant).

*Robert E. Beach, Jr.,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Walter D. Flanagan,* assistant state's attorney, for the appellee (state).

LOISELLE, J. The defendant, William Toste, was found guilty of murder, in violation of General Statutes § 53a-54a, by a jury of twelve. In this appeal, the defendant pursues five claims of error, only two of which are discussed in this opinion.

The defendant assigns as error the court's admission of testimony by a psychologist and a psychiatrist, each of whom examined the defendant. Since each of these experts testified in a different capacity, we review their testimony separately.

Marvin F. Mankowitz, Ed. D., licensed as a consulting psychologist, examined the defendant pursu-

ant to a defense motion but was called to testify as a state's witness. The defendant contends that the admission of Mankowitz' testimony violated the attorney-client privilege and, thus, the defendant's sixth amendment right to the assistance of counsel. Where a psychiatric expert, whether psychiatrist or psychologist, is retained by a criminal defendant or by his counsel for the sole purpose of aiding the accused and his counsel in the preparation of his defense, the attorney-client privilege bars the state from calling the expert as a witness. The fact that the psychiatric expert was appointed by the court rather than employed by the defense is irrelevant; the law affords no lesser protection for a defendant who is indigent than for one with means to retain his own psychiatrist to prepare a defense. This rule is consistent with a majority of jurisdictions who have resolved this issue. *United States* v. *Alvarez,* 519 F.2d 1036, 1046–47 (3d Cir. 1975); *Pouncy* v. *State,* 353 So. 2d 640, 641 (Fla. App. 1977); *People* v. *Lines,* 13 Cal. 3d 500, 513–15, 531 P.2d 793, (1975); *People* v. *Hilliker,* 29 Mich. App. 543, 547–49, 185 N.W.2d 831 (1971); *State* v. *Kociolek,* 23 N.J. 400, 411–17, 129 A.2d 417 (1957); contra, *People* v. *Edney,* 39 N.Y.2d 620, 350 N.E.2d 400 (1976).[1] The court's admission of Mankowitz' testimony as a state's witness was in error.[2]

---

[1] The minority position is enunciated in *People* v. *Edney,* 39 N.Y.2d 620, 350 N.E.2d 400 (1976), which holds that where the defense of insanity is asserted and the defendant offers evidence to establish this defense, a waiver of the attorney-client privilege is effected, thereby permitting the prosecution to call a psychiatric expert who had examined the defendant at his attorney's request.

[2] The attorney-client privilege does not protect communications between the defendant and a psychiatrist appointed by the court to prepare a report for the court, because such communications are not made to the defendant's attorney at his request for purposes protected by the attorney-client relationship.

The state also called Robert Miller, M.D., a psychiatrist, to testify to the defendant's mental state. The defendant claims that the court's admission of his testimony was error because the defendant's communications with Miller were protected by the psychiatrist-patient privilege as provided in General Statutes §§ 52-146d–52-146j. Although Miller was engaged by the state to examine the defendant for the state, the record does not support the state's claim that his services were a result of a court order as required by § 52-146f.

In *State* v. *White*, 169 Conn. 223, 234, 363 A.2d 143, cert. denied, 423 U.S. 1025, 96 S. Ct. 469, 46 L. Ed. 2d 399 (1975), this court recognized that §§ 52-146d–52-146j create "a broad psychiatrist-patient privilege" with exceptions which are not limited to those found in § 52-146f.[3] In cases where a psychiatric examination is ordered by the court, the defendant's communications to the psychiatrist during the court-ordered examination may be disclosed at trial where his mental illness is an issue. General Statutes § 52-146f (d). Where, as here, there is no court order enabling the prosecution to obtain a psychiatrist to examine the defendant, the privilege is preserved and the state's psychiatric expert may not testify at trial about his communications with the defendant. The only exception to this rule is created where the defendant waives his rights under the psychiatrist-patient privilege by permitting the state's psychiatrist to examine him without a court order. Nevertheless, such a waiver must be the intelligent relinquishment of a known

---

[3] In *State* v. *White*, 169 Conn. 223, 233, 363 A.2d 143, we held that General Statutes § 19-492 (c), for example, provides a specific instance where the privilege may not be invoked.

right. A necessary element to waiver is the requisite knowledge of the right and a waiver presupposes a full knowledge of an existing right or privilege and something done designedly or knowingly to relinquish it. *State* v. *Kearney,* 164 Conn. 135, 139, 318 A.2d 100 (1972). The defendant was examined by the state's psychiatrist without prior court approval or notice to counsel and no waiver is noted in the record. The court erred in admitting the testimony of Miller.

In his next assignment of error, the defendant contends that the court improperly included the *M'Naghten* and *Durham* rules and omitted the "irresistible impulse" rule in its charge to the jury on the defendant's insanity defense. *M'Naghten's Case,* 8 Eng. Rep. 718 (1843); *Durham* v. *United States,* 214 F.2d 862 (D.C. Cir. 1954).

Until 1967, Connecticut's common-law test of insanity as a defense to a crime provided: "(1) that an accused, to be the subject of punishment, must have had mind, capacity, reason and understanding sufficient to have enabled him to judge of the nature, character and consequences of the act charged against him, that the act was wrong and criminal, and that the commission of it would justly and properly expose him to punishment; and (2) that, in committing the act, he was not overcome by an irresistible impulse arising from mental disease. *State* v. *Davies,* 146 Conn. 137, 144, 148 A.2d 251, cert. denied, 360 U.S. 921, 79 S. Ct. 1441, 3 L. Ed. 2d 1537; *State* v. *Donahue,* 141 Conn. 656, 664, 109 A.2d 364, cert. denied, 349 U.S. 926, 75 S. Ct. 775, 99 L. Ed. 1257; and *State* v. *Wade,* 96 Conn. 238, 242, 113 A. 458." *State* v. *Conte,* 157

Conn. 209, 210–11, 251 A.2d 81, cert. denied, 396 U.S. 964, 90 S. Ct. 439, 24 L. Ed. 2d 428 (1968). This common-law rule sought to incorporate standards of both cognition and volition and then to apply to both the *M'Naghten* formula to determine the actor's capacity to distinguish right from wrong and the irresistible impulse standard to ascertain his capacity for self-control.

In 1967, the General Assembly adopted the model penal code definition of insanity; General Statutes § 54-82a, now § 53a-13;[4] as a statutory standard to be invoked in lieu of the common-law test. The American Law Institute drafters of this provision believed that "the *M'Naghten* rule is right as far as its principle extends . . . . [But t]he question is whether the rule goes far enough to draw a fair and workable discrimination. Almost all informed opinion holds that it does not . . . ." Wechsler, "Codification of Criminal Law in the United States: The Model Penal Code," 68 Colum. L. Rev. 1425, 1442 (1968). The drafters concluded that "no test is workable that calls for the complete impairment of ability to know or to control . . . ;" Wechsler, op. cit. 1443; and drafted the "substantial capacity" test adopted by the Connecticut legislature in 1967.

In its charge to the jury, the trial court properly instructed the jury with the statutory language three times. Between the first and second repeti-

---

[4] "[General Statutes] Sec. 53a-13. INSANITY AS DEFENSE. In any prosecution for an offense, it shall be a defense that the defendant, at the time of the proscribed conduct, as a result of mental disease or defect lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. As used in this section, the terms mental disease or defect do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct."

tions of the statute, however, the trial court charged the *Durham* rule in substance;[5] between the second and third repetitions, it recited the *M'Naghten* rule.[6] The defendant contends that the only standard by which the defendant's insanity should have been evaluated was that found in General Statutes § 53a-13. The *Durham* rule was explicitly rejected by this court in *State* v. *Davies,* 146 Conn. 137, 147, 148 A.2d 251 (1959). The *M'Naghten* rule's search for whether the defendant knew right from wrong has been superseded by that portion of § 53a-13 which requires the jury to determine whether the defendant "lacked substantial capacity . . . to appreciate the wrongfulness of his conduct . . . ." Both tests require a determination of the defendant's cognitive capacity to distinguish right from wrong, but the statutory test is less stringent. The two tests are therefore incompatible and the standard articulated by the legislature must prevail.

It might be argued that since the *M'Naghten* rule is a more stringent test, even though there was error in submitting the rule to the jury, the charge was favorable to the defendant and, hence, harmless. The reference, in substance, to the elements in the *Durham* rule, which was in error, and the commingling of the old common-law rules with the statutory rule, could only create confusion as to what was the correct standard for determining

[5] The trial court instructed the jury that: "For a person not to be responsible for his criminal conduct there must be a causal relation between the mental disease or defect that he has at the time of that conduct, if any is found in the criminal conduct, so that it can be found that were it not for the mental disease or defect that conduct would not have taken place."

[6] The trial court instructed the jury that: "The definition of insanity would include a mind which is either so naturally weak or so impaired by disease or otherwise as to make its possessor incapable of distinguishing right from wrong."

insanity. Moreover, the supplemental charge did not clear up this confusion.

The defendant also claims that the court erred when it denied his request to charge on irresistible impulse. The defendant contends that the statutory definition of insanity found in § 53a-13 did not replace this charge at common law: If, in committing the act, the accused was overcome by an irresistible impulse arising from mental disease, then he may be found not guilty by reason of insanity. *State* v. *Conte,* 157 Conn. 209, 210–11, 251 A.2d 81 (1968). Both the intent of the drafters and the statutory language belie this claim. The drafters intended to replace both cognitive and volitional elements with a single statutory standard. Wechsler, op. cit. 1441–44; LaFave & Scott, Criminal Law § 38, p. 293. The statute evinces their intent by its requirement that the defendant lack "substantial capacity . . . to conform his conduct to law." General Statutes § 53a-13. The common-law irresistible impulse test has been encompassed by this second prong of the statutory standard.

In sum, the only standard by which to determine insanity as a defense to a crime is that found in General Statutes § 53a-13. Those portions of the trial court's instructions to the jury which included previously accepted common-law definitions and the principles of the *Durham* rule, previously rejected by this court, were harmful error.

The other assignments of error are not of sufficient consequence to require discussion. There is harmful error in none of them.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.