## STATE OF CONNECTICUT *v.* BALLAH KEMAH[1]
## (SC 18148)

Rogers, C. J., and Katz, Vertefeuille, Zarella and Schaller, Js.

[1] We note that the filings in this case are not consistent in the spelling of the defendant's first name, referring to him either as Ballah or Bellah. We refer to the defendant as Ballah Kemah in conformity with the information filed by the state and the trial court's judgment file.

Argued September 2—officially released November 4, 2008

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *Patricia M. Froehlich*, state's attorney, and *Thomas M. DeLillo*, assistant state's attorney, for the appellant (state).

*Pamala J. Favreau*, with whom, on the brief, was *Kyle McCarthy*, certified legal intern, for the appellee (defendant).

*David T. Grudberg* filed a brief for the Connecticut Criminal Defense Lawyers Association as amicus curiae.

*Opinion*

KATZ, J. The sole issue in the state's interlocutory public interest appeal[2] is whether the trial court improperly departed from the ruling of *State* v. *Esposito*, 192 Conn. 166, 179–80, 471 A.2d 949 (1984), and its progeny when it ordered full disclosure of a complainant's confidential mental health records to the defense based solely on the complainant's prior consent to the disclosure of such records to the police and prosecuting authorities. The state contends that the trial court relied on Appellate Court case law that is contrary to controlling law and against public policy. We agree and reverse the decision of the trial court.

The record reveals the following undisputed facts and procedural history. On December 8, 2004, the state police received a report from the department of children and families (department) of suspected sexual abuse at The Learning Clinic, a private residential school for children who generally have emotional and behavioral

---

[2] The Chief Justice granted the state's petition for certification to appeal, pursuant to General Statutes § 52-265a. "Section 52-265a allows the chief justice to certify a direct appeal to the Supreme Court from an interlocutory order of the Superior Court on an issue of law that involves a matter of substantial public interest and in which delay may work a substantial injustice." (Internal quotation marks omitted.) *Packer* v. *Board of Education*, 246 Conn. 89, 97, 717 A.2d 117 (1998).

problems that severely impair their ability to function outside of a therapeutic setting. The report indicated that a sixteen year old female student (complainant),[3] who resided in one of the school's dormitories, had stated that she had been sexually involved with a male staff member. During the relevant period, the defendant, Ballah Kemah, was employed as an "awake overnight house parent" at the school's dormitories. The state police commenced an investigation, pursuant to which State Trooper Robert J. Evangelista interviewed the complainant, who identified the defendant as the person with whom she had been involved, the defendant, who denied the allegations, and other staff members and students at the school. The complainant told Evangelista that she was at The Learning Clinic because of past drug use, that she did not have a learning disability, but that she was bipolar and had manic episodes. By way of substitute information, the state thereafter charged the defendant with one count of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (10)[4] and one count of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (8)[5] for conduct that allegedly had occurred on or about December 1, 2004.

[3] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[4] General Statutes § 53a-71 (a) provides in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and . . . (10) the actor is twenty years of age or older and stands in a position of power, authority or supervision over such other person by virtue of the actor's professional, legal, occupational or volunteer status and such other person's participation in a program or activity, and such other person is under eighteen years of age."

[5] General Statutes § 53a-73a (a) provides in relevant part: "A person is guilty of sexual assault in the fourth degree when . . . (8) such person subjects another person to sexual contact and (A) the actor is twenty years of age or older and stands in a position of power, authority or supervision over such other person by virtue of the actor's professional, legal, occupational or volunteer status and such other person's participation in a program or activity, and (B) such other person is under eighteen years of age."

The defendant filed several pretrial motions, including one captioned "Motion for Disclosure and Production of Psychiatric, [Department] and Other Confidential Records of the Complaining Witness," wherein he asserted that the investigative police officer and the prosecutor had been given access to the complainant's psychiatric records, school records and records from the department. The defendant asserted that it was his good faith belief that the complainant or her guardian had consented to such access, either orally or in writing, "thereby waiving confidentiality for the purpose of this prosecution." The defendant noted that the state had provided him with some confidential records,[6] but had refused to disclose all such records because the state had "suggested that an 'in camera' review by the trial court is necessary in this case pursuant to *State* v. *Esposito*, [supra, 192 Conn. 166] and its progeny." The defendant contended that, under a line of Appellate Court cases, the *Esposito* gatekeeping

---

[6] At the hearing regarding the confidential records, the state indicated that it already had provided to the defendant some information in the records pursuant to its obligation under *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), to disclose potentially exculpatory information in its possession. The amicus curiae, the Connecticut Criminal Defense Lawyers Association, contends that the state's partial disclosure to the defendant undermines the state's claim that a hearing and consent are required under the controlling law and policy. We disagree. The state's position before the trial court was that it legally was obligated under *Brady* to disclose certain information, irrespective of the complainant's consent. Without addressing the correctness of the state's position, we conclude that the state did not waive its claim that a hearing and consent were required for the remaining privileged records in its possession when it disclosed other records under a reasonable belief that there was no exception to, or alternative procedure to meet, its *Brady* obligation. See *State* v. *Sells*, 82 Conn. App. 332, 347, 844 A.2d 235 (concluding that prosecutor improperly turned over to court, instead of directly to defendant, confidential records including exculpatory evidence to satisfy *Brady* obligations, and that procedure for in camera review of privileged records "does not apply when the complainant has waived his rights to confidentiality in the records and the records have been directly turned over to the prosecutor's office"), cert. denied, 270 Conn. 911, 853 A.2d 529 (2004).

function did not apply in the present case because the complainant had waived her right to confidentiality.

At a hearing on the motion for disclosure, the defendant submitted as evidence of the complainant's consent three written releases: (1) a release authorizing Day Kimball Hospital to disclose "any and all records pertaining to [the complainant's] treatment from October 2004 through December 2004" to Evangelista for purposes of "criminal investigation"; (2) a release authorizing The Learning Clinic to disclose the complainant's "psychiatric/therapy record[s]" to Evangelista for purposes of "criminal investigation"; and (3) a release authorizing The Learning Clinic or its clinical director, Kathleen McGrady, to release "all information that you may have concerning [the complainant] . . . and [her] medical records, and psychological records including those of a confidential or privileged nature"[7] to the "[o]ffice of the [s]tate's [a]ttorney . . . ." Testimony adduced at the hearing revealed that the state had not received some portion of the records at issue in the releases.[8] In compliance with the defendant's subpoenas, however, The Learning Clinic and the department submitted to the court all of the complainant's confidential records. The defendant argued that disclosure of these records was necessary to protect his right to prepare a defense. Both parties presented argument as to whether the records should be disclosed

[7] The terms "confidential" and "privilege" can have different meanings and legal effects. See generally C. Tait, Connecticut Evidence (3d Ed. 2001) § 5.2 (distinguishing privileges and confidentiality). Our case law, however, often refers to records as both confidential and privileged when they are shielded from disclosure by statute and consent by the subject of the records or his or her representative must be obtained in order to disclose the records.

[8] At the hearing, McGrady testified that she had not turned over all of the complainant's records to the state's attorney's office, some due to inadvertence and others due to her belief that she had a professional obligation not to disclose certain records despite the complainant's release. The state's attorney represented to the trial court that he was not sure whether all of the department records had been disclosed to his office.

to the defendant in light of the releases and whether an in camera inspection of the records was necessary before such a disclosure could be ordered. The complainant did not participate in these proceedings.

After the hearing, the trial court issued a written decision granting the defendant's motion for disclosure. The court concluded that *State* v. *Palladino*, 69 Conn. App. 630, 796 A.2d 577 (2002), *State* v. *Sells*, 82 Conn. App. 332, 844 A.2d 235, cert. denied, 270 Conn. 911, 853 A.2d 529 (2004), and *State* v. *Boyd*, 89 Conn. App. 1, 872 A.2d 477, cert. denied, 275 Conn. 921, 883 A.2d 1247 (2005), controlled the outcome. The trial court cited these cases for the following proposition: "Where the state's complaining witness has waived her right to confidentiality in 'any and all information' concerning the witness and her medical and psychological records, including those of a confidential or privileged nature, and the records have been directly turned over to the prosecutor's office, there is no initial gatekeeping role for the court and the records should be disclosed to the defendant." The trial court concluded that the three releases in the present case met this standard. To the extent, however, that certain records had not been disclosed to the state, the court concluded that these records could not yet be disclosed to the defendant and must be segregated. With respect to these undisclosed records, consistent with *Esposito*, the court: (1) found that there were reasonable grounds to believe that the failure to disclose this evidence is likely to impair the defendant's right of confrontation; and (2) set a date by which the state could secure the complainant's consent to an in camera review of the records by the court and her consent to disclose pertinent records to the defendant. The state filed a motion for reconsideration, which the trial court did not act on, and this public interest appeal followed. Thereafter, the state filed a motion in the trial court to stay the order pending resolution of the

certified appeal, which that court granted. This appeal pertains only to the records that the state was ordered to disclose without obtaining further consent of the complainant.[9]

On appeal, the state claims that the trial court improperly failed to follow the procedures set forth in *Esposito* and its progeny before ordering the disclosure of the complainant's confidential mental health records[10] to the defendant. The state contends that the trial court's conclusion that the releases in favor of the state resulted in an implied complete waiver of privilege contravened the specific, written waiver required by statute. The state further contends that the Appellate Court case law relied on by the trial court, holding that disclosure

[9] We granted the state's request to certify the following question for appeal: "Did the trial court err in departing from this [c]ourt's analysis in *State v. Esposito*, [supra, 192 Conn. 179–80], and its progeny and ordering full disclosure of a victim/witness' confidential mental health records to the defense solely on the grounds that the victim/witness' limited consent to the disclosure of such records to police and prosecuting authorities warranted disclosure of those records to the defense, even in the absence of any further consent?"

The record before us is unclear as to whether the trial court's stay affected only the records in the state's possession that it was ordered to disclose, or whether it also stayed the order on the records that were not in the state's possession. Neither party has indicated whether the complainant has consented to an in camera review of the latter group of records. The parties agree, however, that this appeal pertains solely to the records in the state's possession that the court ordered disclosed without following the procedures set forth in *Esposito*.

[10] The confidential records at issue in this appeal apparently include records from: The Learning Clinic, which included, inter alia, academic, medical and mental health information; records from the department; and medical treatment records from Day Kimball Hospital. The trial court did not make any distinction among these records in its decision. Before this court, both parties have proceeded from the premise that all of the records contain information that falls within the purview of General Statutes § 52-146e, which relates to the confidentiality of psychiatric records, and have focused their arguments on whether the releases constitute a waiver of privilege under that statute. Therefore, we presume that § 52-146e is controlling as to all of the records. For ease of reference, we conform to the state's characterization of the records in its certified question as mental health records.

to the state requires disclosure to the defendant, is contrary to this court's case law, as well as public policy, and should be overruled.

In response, the defendant contends that the trial court properly concluded that it has no gatekeeping function when a complaining witness has executed releases for confidential records for use in a criminal prosecution and has turned those records over to the state. The defendant disputes the state's contention that the trial court decided the effect of the releases on the basis of implied waiver; rather, he contends that the court properly concluded that the releases waived confidentiality because they were general in nature and lacked any limitation on the use of the records. The defendant also contends that, because the records at issue are necessary to prepare his defense, the *Esposito* procedures are not sufficient to protect his rights under the sixth amendment to the federal constitution and under article first, § 8, of the state constitution. We agree with the state.

The precise issue before us is whether the complainant waived the statutorily protected confidentiality of her mental health records under General Statutes §§ 52-146d and 52-146e,[11] so that the trial court had no gate-

---

[11] General Statutes § 52-146e provides: "(a) All communications and records as defined in section 52-146d shall be confidential and shall be subject to the provisions of sections 52-146d to 52-146j, inclusive. Except as provided in sections 52-146f to 52-146i, inclusive, no person may disclose or transmit any communications and records or the substance or any part or any resume thereof which identify a patient to any person, corporation or governmental agency without the consent of the patient or his authorized representative.

"(b) Any consent given to waive the confidentiality shall specify to what person or agency the information is to be disclosed and to what use it will be put. Each patient shall be informed that his refusal to grant consent will not jeopardize his right to obtain present or future treatment except where disclosure of the communications and records is necessary for the treatment.

"(c) The patient or his authorized representative may withdraw any consent given under the provisions of this section at any time in a writing addressed to the person or office in which the original consent was filed.

keeping function prior to disclosing the records to the defendant, because: (1) the complainant had executed releases for those records in favor of the state; and (2) those records in turn were disclosed to the state. As this inquiry presents questions of law, our review is plenary.[12] See *State* v. *Jenkins*, 271 Conn. 165, 180–86,

Withdrawal of consent shall not affect communications or records disclosed prior to notice of the withdrawal."

The principal terms in § 52-146e are defined under General Statutes § 52-146d, which provides: "As used in sections 52-146d to 52-146i, inclusive:

"(1) 'Authorized representative' means (A) a person empowered by a patient to assert the confidentiality of communications or records which are privileged under sections 52-146c to 52-146i, inclusive, or (B) if a patient is deceased, his personal representative or next of kin, or (C) if a patient is incompetent to assert or waive his privileges hereunder, (i) a guardian or conservator who has been or is appointed to act for the patient, or (ii) for the purpose of maintaining confidentiality until a guardian or conservator is appointed, the patient's nearest relative;

"(2) 'Communications and records' means all oral and written communications and records thereof relating to diagnosis or treatment of a patient's mental condition between the patient and a psychiatrist, or between a member of the patient's family and a psychiatrist, or between any of such persons and a person participating under the supervision of a psychiatrist in the accomplishment of the objectives of diagnosis and treatment, wherever made, including communications and records which occur in or are prepared at a mental health facility;

"(3) 'Consent' means consent given in writing by the patient or his authorized representative;

"(4) 'Identifiable' and 'identify a patient' refer to communications and records which contain (A) names or other descriptive data from which a person acquainted with the patient might reasonably recognize the patient as the person referred to, or (B) codes or numbers which are in general use outside of the mental health facility which prepared the communications and records;

"(5) 'Mental health facility' includes any hospital, clinic, ward, psychiatrist's office or other facility, public or private, which provides inpatient or outpatient service, in whole or in part, relating to the diagnosis or treatment of a patient's mental condition;

"(6) 'Patient' means a person who communicates with or is treated by a psychiatrist in diagnosis or treatment;

"(7) 'Psychiatrist' means a person licensed to practice medicine who devotes a substantial portion of his time to the practice of psychiatry, or a person reasonably believed by the patient to be so qualified."

[12] The defendant contends that the trial court's decision to disclose the records should be reviewed under the abuse of discretion standard. That

856 A.2d 383 (2004) (conducting plenary review over question of implied waiver of statutory psychiatrist-patient privilege); *In re William*, 88 Conn. App. 511, 517–18, 870 A.2d 1102 (2005) (stating that plenary review applied to questions of whether confidentiality under General Statutes § 46b-124 "can be waived and, if so, whether it was effectively waived in this case"); see also *C. R. Klewin Northeast, LLC* v. *Bridgeport*, 282 Conn. 54, 86–87, 919 A.2d 1002 (2007) ("Ordinarily, [w]aiver is a question of fact subject to the clearly erroneous standard of review. . . . [P]lenary review is appropriate in the present case because when a trial court makes a decision based on pleadings and other documents, rather than on the live testimony of witnesses, we review its conclusions as questions of law." [Citations omitted; internal quotation marks omitted.]).

Before turning to the merits, we must address a claim raised by the defendant and the amicus curiae, the Connecticut Criminal Defense Lawyers Association,[13] that

standard, however, would guide our review of evidentiary decisions, specifically, whether a party seeking access to confidential records had made the preliminary showing required to necessitate an in camera review of the records; see *State* v. *George*, 280 Conn. 551, 599, 910 A.2d 931 (2006), cert. denied, 549 U.S. 1326, 127 S. Ct. 1919, 167 L. Ed. 2d 573 (2007); or whether the records contain information that must be disclosed to the defendant; see *State* v. *D'Ambrosio*, 212 Conn. 50, 58–59, 561 A.2d 422 (1989), cert. denied, 493 U.S. 1063, 110 S. Ct. 880, 107 L. Ed. 2d 963 (1990). The present case, however, presents the question of whether, under the circumstances presented, the trial court was required, as a matter of law, to follow certain procedures before disclosing the records.

[13] We note that the amicus also contends that this court should conclude that the Chief Justice improperly granted the state's petition for this interlocutory appeal because this issue is not of substantial public interest. The merits of this argument aside, the amicus has not pointed us to any authority that would permit us to overrule a decision vested exclusively by statute in the Chief Justice. See footnote 2 of this opinion. We also express our disapproval of the fact that, contrary to the stated purpose of the amicus' request to file a brief in support of the defendant's position that the trial court properly applied precedent and properly ordered disclosure, only one page of its brief actually is devoted to the basis on which that request was granted.

the state lacks standing to bring this appeal, as that question pertains to our jurisdiction. *State* v. *T.D.*, 286 Conn. 353, 358, 944 A.2d 288 (2008). They contend that because the statutory privilege against disclosure of mental health records is personal to the holder of the privilege; *State* v. *Pierson*, 208 Conn. 683, 689, 546 A.2d 268 (1988), cert. denied, 489 U.S. 1016, 109 S. Ct. 1131, 103 L. Ed. 2d 193 (1989); the state lacks the aggrievement necessary to challenge the trial court's order disclosing the records to the defendant. We disagree.

The state is not seeking to assert the complainant's privilege against disclosure of her mental health records. Rather, the state is seeking to ensure that the *prosecution's* legal obligation to investigate the credibility of allegations of criminal conduct is not unduly hampered. See *State* v. *Colton*, 234 Conn. 683, 691 n.11, 663 A.2d 339 (1995) ("It is well established . . . that a state's attorney has a duty, not solely to obtain convictions, but to ensure that all evidence tending to aid in the ascertaining of the truth be laid before the court, whether it be consistent with the contention of the prosecution that the accused is guilty. . . . From this duty it necessarily follows that a state's attorney has the obligation to investigate fully the veracity of a witness' potential testimony in order to determine if that witness should testify." [Citation omitted; internal quotation marks omitted.]), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1986); *Massameno* v. *Statewide Grievance Committee*, 234 Conn. 539, 556–57, 663 A.2d 317 (1995) ("[the state's attorney] is under a duty not solely to obtain convictions but, more importantly, [1] to determine that there is reasonable ground to proceed with a criminal charge . . . [2] to see that impartial justice is done the guilty as well as the innocent; and [3] to ensure that all evidence tending to aid in the ascertaining of the truth be laid before the court,

whether it be consistent with the contention of the prosecution that the accused is guilty" [citations omitted; internal quotation marks omitted]). The trial court's conclusion that the complainant's decision to disclose her records to the state constitutes a complete waiver of her privilege to all parties in the case undoubtedly will interfere with the state's ability to discharge those obligations. There is a substantial likelihood that complainants will not provide the state with access to their confidential records if the automatic effect of that decision is to allow unfettered access to those records, including by an alleged perpetrator. Indeed, it was precisely this concern as to whether the statutory scheme intended such an effect that led to the certification of this interlocutory public interest appeal. Therefore, the state is classically aggrieved and has standing to challenge the trial court's ruling. See *State* v. *T.D.*, supra, 286 Conn. 358 ("[t]o be aggrieved, a party must have a specific personal and legal interest in the subject matter of the litigation and, further, that interest must be specially and injuriously affected by the decision at issue"). We therefore turn to the issue raised in this appeal.

This court previously has explained that "§ 52-146e spreads a veil of secrecy over communications and records relating to the diagnosis or treatment of a patient's mental condition. With certain exceptions not pertinent to the present discussion, the statute provides that 'no person may disclose or transmit any communications and records . . . to any person, corporation or governmental agency without the consent of the patient or his authorized representative.' [General Statutes § 52-146e (a)]. The broad sweep of the statute covers not only disclosure to a defendant or his counsel, but also disclosure to a court even for the limited purpose of an in camera examination." *State* v. *Esposito*, supra, 192 Conn. 177–78.

"A criminal defendant has a constitutional right to cross-examine state witnesses, however, which may include impeaching or discrediting them by attempting to reveal to the jury the witnesses' biases, prejudices or ulterior motives, or facts bearing on the witnesses' reliability, credibility, or sense of perception. . . . Thus, in some instances, a patient's psychiatric privilege must give way to a criminal defendant's constitutional right to reveal to the jury facts about a witness' mental condition that may reasonably affect that witness' credibility. . . . The defendant's right of cross-examination does not, however, allow him to discredit and impeach in whatever way, and to whatever extent, the defense might wish. . . . We have therefore directed trial courts to engage in a specific procedure designed to accommodate this inherent tension." (Citations omitted; internal quotation marks omitted.) *State* v. *D'Ambrosio*, 212 Conn. 50, 55–57, 561 A.2d 422 (1989).

In *State* v. *Esposito*, supra, 192 Conn. 179–80, we set forth the following procedure for the disclosure of confidential records. "If . . . the claimed impeaching information is privileged there must be a showing that there is reasonable ground to believe that the failure to produce the information is likely to impair the defendant's right of confrontation such that the witness' direct testimony should be stricken. Upon such a showing the court may then afford the state an opportunity to secure the consent of the witness for the court to conduct an in camera inspection of the claimed information and, if necessary, to turn over to the defendant any relevant material for the purposes of cross-examination. If the defendant does make such showing and such consent is not forthcoming then the court may be obliged to strike the testimony of the witness. If the consent is limited to an in camera inspection and such inspection, in the opinion of the trial judge, does not disclose relevant material then the resealed record is

to be made available for inspection on appellate review. If the in camera inspection does reveal relevant material then the witness should be given an opportunity to decide whether to consent to release of such material to the defendant or to face having her testimony stricken in the event of refusal." Id., 179–80.

*Esposito* did not address directly the question of waiver. Our recognition therein, however, that two levels of consent from the holder of the privilege are required before a defendant may obtain access to confidential records—consent to an in camera review and consent to disclose to the defendant any impeachment or exculpatory evidence that the court's review yields—reflects that a witness will not be deemed to have waived the privilege in full simply by authorizing the court to review her records. Subsequent to our decision in *Esposito*, this court specifically considered the issue of waiver. A review of these cases demonstrates that we have construed waivers narrowly and have declined to imply a complete waiver of privilege from a waiver as to particular matters or as to disclosure to certain persons.

In *State* v. *Pierson*, 201 Conn. 211, 218–19, 514 A.2d 724 (1986), on appeal after remand, 208 Conn. 683, 546 A.2d 268 (1988), cert. denied, 489 U.S. 1016, 109 S. Ct. 1131, 103 L. Ed. 2d 193 (1989), the defendant challenged the trial court's ruling upholding an assertion of privilege under §§ 52-146d and 52-146e by a therapist who had treated the complainant, a child victim of sexual assault. The state had offered the therapist's testimony solely for purposes of constancy of accusation. Id., 220. The therapist had refused to answer the defendant's questions as to the purpose of the complainant's therapy on the ground that this information was privileged. Id., 221. The trial court upheld the privilege, ruling that the questions were unrelated to the constancy of accusation issue. Id. The trial court rejected the defendant's claim

"that the patient-psychiatrist privilege [was] waived entirely once [the therapist] testified about his interview with the victim and his mother on . . . the date of the sexual assault." Id.

In similarly rejecting that claim, this court explained: "Although this court has indicated that a patient may waive the privilege against disclosure of conversations and records pertaining to psychiatric treatment, we have never held that such waiver may be implied merely from testimony at a trial concerning events relevant to proof of the crime. The testimony concerning the complainant's narrative to [the therapist] concerning the sexual assault offense, which the trial court ruled was not privileged and was, therefore, properly subject to cross-examination, cannot be deemed to provide access to wholly separate communications related to treatment of the boy or his mother. '[W]aiver is the voluntary relinquishment of a known right.' *Del Vecchio* v. *Del Vecchio*, 146 Conn. 188, 194, 148 A.2d 554 (1959). The trial record is barren of any indication that the complainant or his mother was aware that, as a consequence of testifying at the behest of the state, consent to access by the defendant to the entire series of their consultations with [the therapist] would be implied. 'Consent' is expressly required by subsection (a) of § 52-146e for disclosure of psychiatric communications or records and is defined in § 52-146d (3) to mean 'consent given in writing by the patient or his authorized representative.' Subsection (b) of § 52-146e requires that '[a]ny consent given to waive confidentiality shall specify to what person or what agency the information is to be disclosed and to what use it will be put.' These statutory provisions preclude at least the implied waiver that the defendant contends arose from the testimony offered to prove constancy of accusation on the part of the complainant. Even in the absence of such legislative restrictions upon the principle of implied waiver, none

of the authorities relied on by the defendant has gone so far as to declare that revelation by a witness of one conversation that would otherwise be privileged constitutes a waiver of other unrelated conversations with the same person." *State* v. *Pierson*, supra, 201 Conn. 222–23.

Similarly, in *State* v. *Jenkins*, supra, 271 Conn. 183, we rejected a claim by the state that the defendant had waived his privilege against disclosure of his mental health records by raising the claim that he was intoxicated when he fatally wounded the victim. At trial, the defendant testified that he habitually had used twenty to thirty bags of heroin per day and that he had consumed a number of bags of heroin the night before and on the morning of the victim's death. Id. The trial court had permitted the state, over the defendant's objection, to introduce evidence from the defendant's mental health records, prepared by the mental health unit of the department of correction, indicating that the defendant had reported a habit of consuming only two to three bags of heroin per day. Id., 176–77. On appeal, the defendant challenged the state's position that the defendant's testimony had resulted in an implied waiver of his right to invoke the statutory privilege. Id., 183. We agreed with the defendant.

Citing *State* v. *Pierson*, supra, 201 Conn. 222, we stated: "The statute does not authorize the disclosure of psychiatric records or communications upon such an implied waiver but, instead, requires the patient's express consent. . . . Moreover, in the absence of express consent by the patient, courts have no authority to create nonstatutory exceptions to the general rule of nondisclosure. [T]he exceptions to the general rule of nondisclosure of communications between psychiatrist and patient were drafted narrowly to ensure that the confidentiality of such communications will be protected unless important countervailing considerations

require their disclosure. *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 195, 663 A.2d 1001 (1995). It is the responsibility of the legislature, not the courts, to balance the patient's right to confidentiality against any other opposing considerations. *Falco* v. *Institute of Living*, [254 Conn. 321, 330 n.7, 757 A.2d 571 (2000)]. As we have stated, it is contrary to the language of the statute and the intent of the legislature for courts to make discretionary case-by-case determinations of when the privilege may be overridden. Id., 331." (Citation omitted; internal quotation marks omitted.) *State* v. *Jenkins*, supra, 271 Conn. 183–84.

Although *Jenkins* did not address constitutional concerns regarding the defendant's right to prepare his defense because the state was the party seeking access to confidential information, its analysis is consistent with the view articulated in *Esposito* and *Pierson* that the statutory scheme requires a narrow construction of a waiver of privilege. With this case law in mind, we turn to the trilogy of Appellate Court cases on which the trial court and the defendant have relied.

In *State* v. *Palladino*, supra, 69 Conn. App. 631, the defendant claimed that the trial court had violated his right of confrontation by withholding the complainant's psychiatric records "despite a full waiver of confidentiality." The complainant's written waiver provided: "I [the complainant] . . . hereby waive any confidentiality I may have in any and all of my medical and/or psychiatric/psychological records so that they may be used in a criminal court case . . . at the New London judicial district court. I do this freely after consulting with and being advised by [my appointed counsel]."[14]

[14] The defendant had been charged with sexual assault in the second degree in violation of § 53a-71 (a) (5) after the complainant, a pretrial detainee at a correctional facility where the defendant worked, alleged that she had engaged in sexual relations with the defendant. *State* v. *Palladino*, supra, 69 Conn. App. 631–32. After the defendant subpoenaed the correctional facility to produce its mental health records for the complainant, the attorney general filed a motion to quash the subpoena on the grounds that mental

Id., 635. The complainant's counsel had represented to the trial court that, prior to executing this waiver, he explained to the complainant her right to confidentiality and that she indicated that she felt comfortable waiving that right with respect to the records sought. Id., 634–35. The trial court nonetheless had refused to disclose the records to the defendant because it construed *Esposito* and its progeny to hold that "there is a right beyond the right of the person involved as to why there is that privilege . . . [a]nd . . . all [the defendant] might be entitled to [would be a] preliminary waiver authorizing only an in camera inspection." (Internal quotation marks omitted.) Id., 634.

The Appellate Court concluded that neither the statutes nor case law supported the trial court's conclusion. The court first determined "that the complainant, after receiving legal advice, waived the confidential privilege she had to object to the release and use by the defendant of any of her medical, psychological or psychiatric records in the course of the trial in New London Superior Court. She did not limit the purposes for which these records might be used and therefore the written waiver can be considered a 'general waiver.' " Id., 635. The Appellate Court therefore considered "whether, in light of such a waiver and the pertinent statutes, the [trial] court still had some gatekeeping role to play in the release of these records." Id., 635–36. In answering

health records are privileged and the complainant had not consented to disclosure. Id., 633. At the hearing on the motion to quash, the state agreed that it was in the complainant's best interest to retain her own counsel with respect to the matter of waiving her statutory right to confidentiality in her psychiatric records. Id. The trial court contacted the public defender's office to appoint independent counsel for the complainant; id.; and the record reflects that this counsel provided advice as to both the complainant's right against self-incrimination and the statutory privilege. The record further reflects that, after receiving that advice and executing the waiver, the complainant later confirmed, according to her counsel, that she had waived her privilege both as to the court's review and as to disclosure to the defendant after that review. Id., 634–35

that question in the negative, the Appellate Court reasoned: "*Esposito* and its progeny have dealt only with situations where the witness had not relinquished the privacy rights to confidentiality governed by § 52-146e . . . . [N]either our Supreme Court nor this court has held that such an in camera review is necessary where a victim freely gives up any rights to confidentiality that she might otherwise have. . . . Indeed, § 52-146e embraces the policy that these rights to confidentiality are personal and may be waived by consent of the individual who enjoys the rights." (Citations omitted.) Id., 636. The Appellate Court underscored that a waiver must be given "knowingly, freely and voluntarily," but concluded that the broad terms of the written waiver and the supporting statements of the complainant's counsel made it clear that this standard had been met in the case before it. Id., 637. In sum, *Palladino* held that, "[w]here the state's complaining witness has freely agreed to the use of [his records] . . . there is no further initial gatekeeping role for the court." Id.

In *Sells* and *Boyd*, the Appellate Court took the holding in *Palladino* one step further and concluded that the *Esposito* gatekeeping procedure "does not apply when the complainant has waived his rights to confidentiality in the records *and the records have been directly turned over to the prosecutor's office*." (Emphasis added.) *State* v. *Sells*, supra, 82 Conn. App. 347; accord *State* v. *Boyd*, supra, 89 Conn. App. 13. In such cases, the court held, the records must be disclosed to the defendant. *State* v. *Boyd*, supra, 13; *State* v. *Sells*, supra, 347. The facts varied slightly in each case. In *State* v. *Sells*, supra, 344–45, the complainant had executed a waiver releasing the records to the state, and the prosecutor had turned them over to the court for an in camera review. In *State* v. *Boyd*, supra, 13, the complainant orally had waived confidentiality with respect to disclosure to the state and to the trial court, and further had

agreed that, following an in camera review, the court could turn over to the defendant the records it had deemed appropriate for disclosure.[15] The Appellate Court, however, did not engage in any inquiry as to the complainant's consent and concomitant scope of the waiver as it did in *Palladino*. Rather, it appears to have assumed that the waivers were, for all intents and purposes, like the general waiver in *Palladino*. In neither case did the court explain whether the state's review of the records had independent significance, and if so, why, or whether the state's review simply was evidence of the fact that the complainant had waived the confidentiality of the records.

For the reasons set forth below, we conclude that *Palladino* is entirely consistent with our case law and the statutory privilege. We further conclude, however, that *Sells* and *Boyd* improperly expanded the holding of *Palladino*, in contravention of our case law and the statutory privilege. Therefore, *Sells* and *Boyd* must be overruled to the extent that they hold that the trial court has no gatekeeping function solely because the complaining witness has waived her privilege in favor of the state.

The court in *Palladino* properly recognized that a witness may execute as broad a waiver of the privilege against disclosure of her confidential records as she deems appropriate. See 13 H.R. Proc., Pt. 9, 1969 Sess., p. 4191, remarks of Representative Robert G. Oliver (noting that proposed bill "giv[es] the patient control over who gets his records"). The court also properly recognized that a waiver will be given effect when it is knowing and voluntary. *State* v. *Palladino*, supra, 69 Conn. App. 637; see *State* v. *Pierson*, supra, 201 Conn.

---

[15] In neither *Sells* nor *Boyd* does the record disclose the exact terms of the complainant's release, but there was consensus among the parties to those cases that the documents were released to the prosecutor and not to the defendant.

223; *State* v. *Toste*, 178 Conn. 626, 629–30, 424 A.2d 293 (1979). The broad, unqualified terms of the waiver and the supporting statements of the complainant's counsel in *Palladino* had made it abundantly clear that the complainant agreed to allow both parties to the criminal case to have access to her psychiatric records. In the absence of any indication that the complainant had intended to limit disclosure to the trial court, or to one party, the Appellate Court properly concluded that the trial court had no further gatekeeping function. *State* v. *Palladino*, supra, 637.

In *Sells* and *Boyd*, however, the Appellate Court did not limit the effect of the complainants' waivers to their explicit terms. The complainants in those cases had waived confidentiality only to allow disclosure to the prosecutor or to the prosecutor and the trial court. Contrary to our holdings in *Pierson* and *Jenkins*, there was nothing to indicate that, by doing so, either complainant knowingly and voluntarily had agreed to give up his or her statutory right to maintain the confidentiality of those records vis-á-vis the defendant. Section 52-146e does not impose an obligation on the holder of the privilege to state expressly to whom the records *cannot* be disclosed. Rather, the statute indicates that the holder of the privilege must state in writing to whom the documents may be disclosed and for what purpose. See General Statutes § 52-146d (3) (defining consent as "consent given in writing"); General Statutes § 52-146e (b) ("[a]ny consent given to waive the confidentiality shall specify to what person or agency the information is to be disclosed and to what use it will be put"). Moreover, to imply a waiver of all confidentiality of records for use in a criminal case from a waiver limited as to one party is contrary to the two levels of consent mandated under *Esposito*.

Turning to the present case, the complainant expressly limited disclosure to a single identified

party—in the first two releases, she agreed to disclose the records to Evangelista for purposes of a "criminal investigation"; in the third release, she agreed to disclose the records to the office of the state's attorney without expressly limiting the purpose for which the state could use the records. There was no evidence that the complainant intended a broader waiver than the express terms of the releases had indicated. The omission of a stated purpose for the release to the office of the state's attorney does not render the release one of a general, unqualified nature, like the one in *Palladino*.[16] Indeed, the standard release form drafted by the office of the state's attorney, in which the complainant had authorized The Learning Clinic to release her records, provided: "I understand that my records are protected under the federal regulations governing confidentiality of patient records . . . and under [then §] 17a-630 of the Connecticut General Statutes[17] and *cannot* be dis-

---

[16] The defendant contends that, in order to preserve the privilege when protected records are released to one party, § 52-146e requires that the release must specify both the party to whom the records are going to be released and the use for which the records are being released. We disagree with the defendant's reading of the statute. Presumably, the defendant relies on the following language in § 52-146e (b): "Any consent given to waive the confidentiality shall specify to what person or agency the information is to be disclosed and to what use it will be put." There is nothing in the statute, however, that provides that the failure to designate *both* a person and use results in a complete waiver of confidentiality. Indeed, the defendant's construction turns the purpose of the statute on its head. The purpose of this scheme is to protect the confidentiality of these records, and to ensure that a limited disclosure would not result in misuse of the records. See 13 H.R. Proc., supra, p. 4191, remarks of Representative Oliver (noting that proposed bill "guards against misuse of confidential information giving the patient control over who gets his records"). Therefore, if both components were mandatory, it is more likely that the consent would be rendered invalid than rendered a complete waiver of privilege. Of course, because the defendant's claim would fail if the releases were deemed invalid, as they are the basis of his claim of right, he asserts that the releases are valid despite any defects.

[17] This statute no longer is in effect. It addressed the confidentiality of alcohol and drug treatment records, protections that now are provided under General Statutes § 17a-688.

closed without my written consent unless otherwise provided for in these regulations." (Emphasis added.) Because a waiver of the statutory privilege requires a knowing relinquishment of a right; *State* v. *Pierson*, supra, 201 Conn. 223; *State* v. *Toste*, supra, 178 Conn. 629–30; it reasonably cannot be contended that the complainant knew that, by releasing her records to state law enforcement officials, she also was relinquishing her right to keep those records confidential as to the defendant. Therefore, the trial court improperly ordered disclosure to the defendant merely because the complainant had waived her statutory privilege with respect to state law enforcement officials. Accordingly, we conclude that the records can be disclosed only in accordance with the procedures set forth in *Esposito*.

Nonetheless, the defendant contends that the trial court properly declined to apply *Esposito* because, in this case, its procedures are inadequate to protect his constitutional right to prepare his defense. He contends that his need for disclosure is more compelling because of the centrality of credibility determinations in a sexual assault case. The defendant underscores his right under *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), to have the state produce any potentially exculpatory materials, and contends that the state unduly has delayed fulfilling those obligations by failing to disclose whether the complainant will consent to disclosure and to complete the review of the records in its possession for *Brady* material. See footnote 6 of this opinion. Although we have not hesitated to modify the *Esposito* procedures when circumstances render them inadequate; see *State* v. *Pierson*, supra, 201 Conn. 228 (modifying procedure for unrecorded communications); we disagree that, under the posture of the present case, it is appropriate or necessary for this court to do so.

It is well settled law that "[a] criminal defendant does not have the right to conduct a general fishing expedition into privileged or sensitive records. *State* v. *Brown*, 273 Conn. 330, 346, 869 A.2d 1224 (2005). . . . [A] defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the [state's] files. . . . *Pennsylvania* v. *Ritchie*, 480 U.S. 39, 59, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987)." (Internal quotation marks omitted.) *Walker* v. *Commissioner of Correction*, 103 Conn. App. 485, 496–97, 930 A.2d 65, cert. denied, 284 Conn. 940, 937 A.2d 698 (2007). Thus, there is no authority to support the proposition that the defendant has a right, even when the complaining witness' credibility is central to the case, to have her confidential records produced directly to him.

We further note that, upon remand, the trial court will be required under *Esposito* to ascertain whether, and to what extent, the complainant consents to disclose her records. At or before that time, the defendant may take up with the trial court any issues he has regarding the state's timeliness and compliance with its discovery obligations pursuant to *Brady*. To the extent that the defendant suggests that he has the right to have the trial court, not the state, review the complainant's records to determine whether they contain exculpatory materials and to have the court turn over such materials irrespective of the complainant's consent, such a claim both falls outside the scope of the certified question and raises a question that is not ripe for review. See *Esposito* v. *Specyalski*, 268 Conn. 336, 346, 844 A.2d 211 (2004) (under ripeness requirement of justiciability, "we must be satisfied that the case before the court does not present a hypothetical injury or a claim contingent upon some event that has not and indeed may never transpire" [internal quotation marks omitted]). The complainant may consent to full

disclosure to the defendant, or, in the absence of such consent, the state or the trial court may take other remedial action.

The trial court's decision ordering disclosure of certain of the complainant's mental health records without following the procedures under *Esposito* is reversed, and the case is remanded for further proceedings.

In this opinion the other justices concurred.