JOSEPH FALCO *v.* INSTITUTE OF LIVING
(SC 16052)

McDonald, C. J., and Borden, Norcott, Palmer and Vertefeuille, Js.

---

Argued April 26—officially released August 22, 2000

*Mark R. Kravitz*, with whom were *Jennifer R. Kinsbruner*, law student, and, on the brief, *Tracey M. Lane* and *Donna R. Zito*, for the appellant (defendant).

*Doreen J. Bonadies*, with whom was *John Biller*, for the appellee (plaintiff).

*Opinion*

NORCOTT, J. The dispositive issue in this certified appeal is whether the psychiatrist-patient privilege

against disclosure, pursuant to General Statutes § 52-146e,[1] is subject to any exceptions beyond those enacted by the legislature. We conclude that it is not and, therefore, we reverse the judgment of the Appellate Court affirming the trial court's granting of the bill of discovery filed by the plaintiff, Joseph Falco, against the defendant psychiatric hospital, the Institute of Living, to compel disclosure of the name, last known address and social security number of one of the defendant's patients referred to as John Doe.

The relevant facts are as follows. On March 10, 1995, the plaintiff was admitted as an inpatient at the defendant. Shortly thereafter, on March 15, 1995, while attending a group meeting, the plaintiff allegedly was attacked without provocation by John Doe.

On January 7, 1997, after the defendant's insurer denied the plaintiff's insurance claim, the plaintiff filed this bill of discovery against the defendant to obtain identifying information from it that would enable him to bring an action against John Doe.[2] The plaintiff indi-

[1] General Statutes § 52-146e provides: "Disclosure of communications. (a) All communications and records as defined in section 52-146d shall be confidential and shall be subject to the provisions of sections 52-146d to 52-146j, inclusive. Except as provided in sections 52-146f to 52-146i, inclusive, no person may disclose or transmit any communications and records or the substance or any part or any resume thereof which identify a patient to any person, corporation or governmental agency without the consent of the patient or his authorized representative.

"(b) Any consent given to waive the confidentiality shall specify to what person or agency the information is to be disclosed and to what use it will be put. Each patient shall be informed that his refusal to grant consent will not jeopardize his right to obtain present or future treatment except where disclosure of the communications and records is necessary for the treatment.

"(c) The patient or his authorized representative may withdraw any consent given under the provisions of this section at any time in a writing addressed to the person or office in which the original consent was filed. Withdrawal of consent shall not affect communications or records disclosed prior to notice of the withdrawal."

[2] The plaintiff did not serve John Doe with a copy of the bill of discovery. Since we rest our decision in this case on statutory grounds alone, we save for another day the issue of whether reasonable efforts or more must be

cated that this information was required immediately in order to file an action before the expiration of the statute of limitations on March 15, 1997. The defendant moved to strike the bill of discovery on the grounds that it was improper under the circumstances, and that § 52-146e prohibited disclosure of communications and records identifying a patient. On February 28, 1997, during the pendency of the bill of discovery, the plaintiff filed a separate civil action against the defendant and John Doe.[3] In paragraph three of the first count of the complaint, the plaintiff identified John Doe by what he believed to be Doe's actual name. On March 10, 1997, in the present case, the trial court granted the plaintiff's bill of discovery and ordered the defendant to disclose John Doe's name, last known address and social security number.[4] The defendant appealed to the Appellate Court, which affirmed, with one judge dissenting, the judgment of the trial court granting the bill of discovery. *Falco* v. *Institute of Living*, 50 Conn. App. 654, 665, 718 A.2d 1009 (1998). The Appellate Court reasoned that, although § 52-146e applied, a court is nonetheless entitled to weigh a patient's statutory privilege against other countervailing considerations and, where appropriate, may provide for exceptions to the privilege beyond those explicitly articulated in the statute. Id., 657–58. Specifically, the court concluded that the plain-

given by a health care provider regarding notice to a patient whose records are sought.

[3] John Doe purportedly was served by abode service at the defendant.

[4] "The plaintiff's original request contained in the bill of discovery requested the full name, last known address, social security number and date of birth, the medical and psychiatric records of John Doe while he was an inpatient at the hospital during March, 1995, and all incident reports made by the defendant regarding the incident that occurred on or about March 15, 1995. At oral argument on the bill of discovery, the plaintiff withdrew his request for the psychiatric records of the patient in question, conceding that it was privileged information, and his request for the incident reports, as that information could be obtained through discovery. The trial court did not grant the plaintiff's request for John Doe's date of birth." *Falco* v. *Institute of Living*, 50 Conn. App. 654, 656 n.2, 718 A.2d 1009 (1998).

tiff's state constitutional right to redress outweighed John Doe's statutory privilege against a "single limited disclosure" of identifying information. Id., 659.

We granted the defendant's petition for certification to appeal limited to the following issue: "Under the circumstances of this case, did the Appellate Court properly conclude that the plaintiff was entitled to a bill of discovery regarding 'John Doe's' name, last known address and social security number?" *Falco* v. *Institute of Living*, 247 Conn. 948, 723 A.2d 324 (1998). The defendant claims that: (1) the trial court improperly exceeded its authority by recognizing an exception to John Doe's privilege that the legislature has not enacted; (2) disclosure of identifying information would implicate John Doe's constitutional privacy rights; and (3) John Doe was entitled to notice before the adjudication of the plaintiff's bill of discovery. We agree with the defendant's first claim. This conclusion renders it unnecessary to reach the second and third claims. Accordingly, we reverse the judgment of the Appellate Court.

The defendant first claims that the Appellate Court improperly concluded that the trial court could exercise its discretion to override the psychiatrist-patient privilege where the court discerned "compelling countervailing interests" not explicitly recognized by the legislature. *Falco* v. *Institute of Living*, supra, 50 Conn. App. 659–60. The defendant argues that § 52-146e prohibits the disclosure of identifying information, narrowly limits the delineated exceptions to nondisclosure, and that the courts may not override that privilege where the legislature has not provided an exception. The plaintiff concedes that § 52-146e controls and that no appropriate statutory exception applies. He nonetheless contends that the trial court may balance competing interests and override the privilege in its discretion. We agree with the defendant.

Section 52-146e (a) provides: "All communications and records as defined in section 52-146d[5] shall be confidential and shall be subject to the provisions of sections 52-146d to 52-146j, *inclusive*. Except as provided in sections 52-146f[6] to 52-146i, *inclusive*, no person may

[5] General Statutes § 52-146d provides in relevant part: "As used in sections 52-146d to 52-146i, inclusive . . .

"(2) 'Communications and records' means all oral and written communications and records thereof relating to diagnosis or treatment of a patient's mental condition between the patient and a psychiatrist, or between a member of the patient's family and a psychiatrist, or between any of such persons and a person participating under the supervision of a psychiatrist in the accomplishment of the objectives of diagnosis and treatment, wherever made, including communications and records which occur in or are prepared at a mental health facility . . .

"(4) 'Identifiable' and 'identify a patient' refer to communications and records which contain (A) names or other descriptive data from which a person acquainted with the patient might reasonably recognize the patient as the person referred to, or (B) codes or numbers which are in general use outside of the mental health facility which prepared the communications and records . . . ."

[6] General Statutes (Rev. to 1995) § 52-146f provides: "Consent of the patient shall not be required for the disclosure or transmission of communications or records of the patient in the following situations as specifically limited:

"(1) Communications or records may be disclosed to other persons engaged in the diagnosis or treatment of the patient or may be transmitted to another mental health facility to which the patient is admitted for diagnosis or treatment if the psychiatrist in possession of the communications or records determines that the disclosure or transmission is needed to accomplish the objectives of diagnosis or treatment. The patient shall be informed that the communications or records will be so disclosed or transmitted. For purposes of this subsection, persons in professional training are to be considered as engaged in the diagnosis or treatment of the patients.

"(2) Communications or records may be disclosed when the psychiatrist determines that there is substantial risk of imminent physical injury by the patient to himself or others or when a psychiatrist, in the course of diagnosis or treatment of the patient, finds it necessary to disclose the communications or records for the purpose of placing the patient in a mental health facility, by certification, commitment or otherwise, provided the provisions of sections 52-146d to 52-146j, inclusive, shall continue in effect after the patient is in the facility.

"(3) Except as provided in section 17b-225, the name, address and fees for psychiatric services to a patient may be disclosed to individuals or agencies involved in the collection of fees for such services. In cases where

disclose or transmit any communications and records or the substance or any part or any resume thereof which *identify a patient* to any person, corporation or

a dispute arises over the fees or claims or where additional information is needed to substantiate the fee or claim, the disclosure of further information shall be limited to the following: (A) That the person was in fact a patient; (B) the diagnosis; (C) the dates and duration of treatment; and (D) a general description of the treatment, which shall include evidence that a treatment plan exists and has been carried out and evidence to substantiate the necessity for admission and length of stay in a health care institution or facility. If further information is required, the party seeking the information shall proceed in the same manner provided for hospital patients in section 4-105.

"(4) Communications made to or records made by a psychiatrist in the course of a psychiatric examination ordered by a court or made in connection with the application for the appointment of a conservator by the probate court for good cause shown may be disclosed at judicial or administrative proceedings in which the patient is a party, or in which the question of his incompetence because of mental illness is an issue, or in appropriate pretrial proceedings, provided the court finds that the patient has been informed before making the communications that any communications will not be confidential and provided the communications shall be admissible only on issues involving the patient's mental condition.

"(5) Communications or records may be disclosed in a civil proceeding in which the patient introduces his mental condition as an element of his claim or defense, or, after the patient's death, when his condition is introduced by a party claiming or defending through or as a beneficiary of the patient and the court or judge finds that it is more important to the interests of justice that the communications be disclosed than that the relationship between patient and psychiatrist be protected.

"(6) Communications or records may be disclosed to the commissioner of public health and addiction services in connection with any inspection, investigation or examination of an institution, as defined in subsection (a) of section 19a-490, authorized under section 19a-498.

"(7) Communications or records may be disclosed to a member of the immediate family or legal representative of the victim of a homicide committed by the patient where such patient has, on or after July 1, 1989, been found not guilty of such offense by reason of mental disease or defect pursuant to section 53a-13, provided such family member or legal representative requests the disclosure of such communications or records not later than six years after such finding, and provided further, such communications shall only be available during the pendency of, and for use in, a civil action relating to such person found not guilty pursuant to section 53a-13."

Although § 52-146f has since been amended, the amendments are not relevant to this appeal. References to § 52-146f are to the 1995 revision of that statute, which was in effect at the time of the incident.

governmental agency without the consent of the patient or his authorized representative." (Emphasis added.)

"As we have previously observed, [t]he people of this state enjoy a broad privilege in the confidentiality of their psychiatric communications and records; *State* v. *D'Ambrosio*, 212 Conn. 50, 55, 561 A.2d 422 (1989), cert. denied, 493 U.S. 1063, 110 S. Ct. 880, 107 L. Ed. 2d 963 (1990); and the principal purpose of that privilege is to give the patient an incentive to make full disclosure to a physician in order to obtain effective treatment free from the embarrassment and invasion of privacy which could result from a doctor's testimony. *State* v. *White*, 169 Conn. 223, 234–35, 363 A.2d 143, cert. denied, 423 U.S. 1025, 96 S. Ct. 469, 46 L. Ed. 2d 399 (1975). Accordingly, the exceptions to the general rule of non-disclosure of communications between psychiatrist and patient were drafted narrowly to ensure that the confidentiality of such communications would be protected unless important countervailing considerations required their disclosure. See, e.g., 9 H.R. Proc., Pt. 8, 1961 Sess., p. 3945, remarks of Representative Nicholas B. Eddy (statutory scheme defines the protected relationship carefully and at the same time recognizes the legitimate interest of society in intruding upon the relationship *in certain limited situations*) . . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 195–96, 663 A.2d 1001 (1995); see also *State* v. *Toste*, 178 Conn. 626, 629, 424 A.2d 293 (1979).

Although we are cognizant that "[c]ommunications that bear no relationship to the purpose for which the privilege was enacted do not obtain shelter under the statute and are admissible subject to the normal rules of evidence"; *Bieluch* v. *Bieluch*, 190 Conn. 813, 819, 462 A.2d 1060 (1983); we are equally convinced that the protection of communications that identify a patient

are central to the purpose of the statute. The language of the statute supports this conclusion. Section 52-146e (a) specifically prohibits the disclosure or transmission of any communications or records that would "identify a patient . . . ." Section 52-146d provides that the phrase " 'identify a patient' refer[s] to communications and records which contain (A) names or other descriptive data from which a person acquainted with the patient might reasonably recognize the patient as the person referred to, or (B) codes or numbers which are in general use outside of the mental health facility which prepared the communications and records . . . ." Further, the fact that an explicit exception contained in subdivision (3) of § 52-146f permits the disclosure of a patient's "name, address and . . . [t]hat the person was in fact a patient" for purposes of collection disputes between the hospital and the patient, lends weight to our conclusion that the general rule against disclosure applies with equal force to identity as to other information.

We therefore disagree with the Appellate Court's characterization of information identifying the patient as "a single limited disclosure . . . ." *Falco* v. *Institute of Living*, supra, 50 Conn. App. 659. We also disagree with the plaintiff's suggestion, at oral argument before this court, that identifying information is of lesser importance within the statutory scheme than other communications and records. The confidentiality of a patient's identity is as essential to the statutory purpose of preserving the therapeutic relationship as the confidentiality of any other information in a patient's communications and records. The statute recognizes the unfortunate reality that a stigma may attach to one who seeks psychiatric care, and that revealing a patient's identity may subject him or her to embarrassment, harassment or discrimination.

It is just as clear that no exception is available beyond those contained in § 52-146f. "[W]e have long held that . . . exceptions to statutes are to be strictly construed with doubts resolved in favor of the general rule rather than the exception . . . . [W]here express exceptions are made, the legal presumption is that the legislature did not intend to save other cases from the operation of the statute." (Citations omitted; internal quotation marks omitted.) *Ensign-Bickford Realty Corp.* v. *Zoning Commission*, 245 Conn. 257, 268, 715 A.2d 701 (1998). With respect to § 52-146e, we have noted that the legislature has narrowly drafted the exceptions to the general rule against disclosure after carefully balancing the important countervailing considerations.[7] *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, supra, 235 Conn. 195. The inference that we draw is that the legislature did not intend to save other cases from the general rule. Consideration of one exception in particular illustrates this point. Subdivision (7) of § 52-146f allows disclosure of communications to "the immediate family or legal representative of the victim of a homicide committed by the patient where such patient has . . . been found not guilty of such offense by reason of mental disease or defect" for use in a civil action against the patient.

---

[7] The "important countervailing considerations" that we noted in *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, supra, 235 Conn. 195, referred to the considerations underlying those exceptions enacted by the legislature. It was not intended as an invitation to courts to determine, independent of statutory enactment, when the privilege should be overridden. This court has never indicated, and explicitly rejects the suggestion, that it is the function of the judiciary to balance these considerations.

Nothing in our decision today contradicts our prior observation that the broad psychiatrist-patient privilege may be subject to exceptions other than those enumerated in § 52-146f. See *State* v. *Toste*, supra, 178 Conn. 629. As we also have noted, however, the creation of those exceptions is within the province of the legislature, not the discretion of the courts. See id.; see also *State* v. *White*, supra, 169 Conn. 233–34.

The passage of the bill that ultimately was enacted as subdivision (7) of § 52-146f followed the murder of a young girl by a psychiatric patient in Middletown. See 35 H.R. Proc., Pt. 13, 1992 Sess., pp. 4441–49. The murder highlighted the difficulties presented to a litigant by the psychiatrist-patient privilege. Id. The legislature, however, did not draft an exception that assists civil claimants in general. See id., p. 4447, remarks of Representative Peter A. Nystrom ("[s]ome of us in the House probably don't think the amendment goes far enough, but that's another battle for another day"). The exception allows disclosure only after a homicide trial, and only after the patient has been found not guilty by reason of mental disease and defect. As Representative Robert M. Ward stated, the exception was a "quite narrowly drawn change to the law . . . strictly limited to those fact patterns" described in the act. Id., p. 4441. Therefore, we conclude that it is contrary to the language of the statute and the intent of the legislature for courts to make discretionary case-by-case determinations of when the privilege may be overridden.

We reject the argument that, even in the absence of a statutory exception, the plaintiff's right to redress pursuant to article first, § 10, of the constitution of Connecticut[8] permits us to override the patient's privilege. We are unpersuaded that the right to redress is implicated at all, either by the statute generally or on the facts of this case specifically.

First, the right to redress is not implicated unless the statute restricts or alters the cause of action itself. See *Gentile* v. *Altermatt*, 169 Conn. 267, 284, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976). The psychiatrist-patient privilege

---

[8] Article first, § 10, of the constitution of Connecticut provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

merely restricts the discovery and the availability of evidence—in this case, the communications and records held by the defendant. In this respect, the psychiatrist-patient privilege is no different from other common privileges such as the attorney-client or spousal privileges. Evidentiary privileges exist for "the protection of interests and relationships which, rightly or wrongly, are regarded as of sufficient social importance to justify some sacrifice of availability of evidence relevant to the administration of justice." 1 C. McCormick, Evidence (4th Ed. 1992) § 72, p. 269. The plaintiff has failed to demonstrate that the privilege limits or impairs the cause of action itself. In the absence of that showing, we cannot conclude that the plaintiff's right to redress is implicated.

Second, the plaintiff presented no evidence in the record to show the absence of alternative means of discovering the requested information other than disclosure by the defendant. The lack of such evidence lends credence to the defendant's argument, which echoes Judge Schaller's dissent from the Appellate Court decision, that the plaintiff employed the bill of discovery as a fast and easy alternative to diligent investigation.[9] The plaintiff merely stated in the bill of discovery that "[t]here are no other adequate means [of] securing the information conveniently, effectively and completely." We agree with Judge Schaller's observation in his dissent that "[i]t can hardly be seriously contended that failing to provide the most *convenient* way to obtain information about a putative defendant deprives a plaintiff" of his right to redress. (Emphasis in original.) *Falco* v. *Institute of Living*, supra, 50 Conn. App. 669.

---

[9] Indeed, the fact that the plaintiff actually learned John Doe's identity prior to the granting of the bill of discovery indicates that alternative methods of investigation were available. It also undercuts the plaintiff's argument that John Doe's privilege would implicate and violate his right of redress by foreclosing his only avenue of discovering Doe's identity.

We therefore conclude that the psychiatrist-patient privilege may be overridden only by legislatively enacted exceptions, and that the facts of this case do not fall within the narrowly drawn exceptions delineated by the legislature.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court, and to remand the case to that court with direction to render judgment for the defendant.

In this opinion the other justices concurred.