JOSEPH ABREU *v.* KARISSA LEONE
(AC 28880)

Gruendel, Alvord and West, Js.

---

[5] Liefland testified that the standard for drug abuse is much lower than the standard for drug dependence.

Argued January 12—officially released April 13, 2010

*John E. Tucker*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellant (intervening plaintiff).

*Tushar G. Shah*, for the appellee (defendant).

*Opinion*

GRUENDEL, J. The intervening plaintiff, the department of children and families (department), appeals from the judgment of the trial court compelling the plaintiff, Joseph Abreu, to respond to certain deposition questions in a separate proceeding brought by the defendant minor child, Karissa Leone, against the department. On appeal, the department challenges that determination as violative of General Statutes (Rev. 2005) § 17a-28. We reverse the judgment of the trial court.

The facts relevant to our resolution of the present appeal are as follows. In 2004, the defendant filed a claim with the claims commissioner seeking permission to bring an action against the department for personal injuries allegedly inflicted by the plaintiff's alleged foster child, Geovanny M. (child). "The defendant's claim alleged that, on November 7, 2003, she was injured while playing on the playscape of a local school, when [the child] who was a ward of the state, intentionally pushed her into a pole. She alleged that [the child] had a 'history of being disruptive and abusive' and that he resided with his foster parent, the plaintiff. The defendant averred: 'It is not known at this time what specific acts or omissions of the [department] may have contributed to the [defendant's] injuries. However, through the process of discovery, it may be determined that [the department] knew, or should have known of the assaultive propensities of the foster child in question, and may indeed be liable to the [defendant] for its failure to act in some fashion.' Pursuant to General Statutes § 52-572 (a), the defendant alleged that the department was the legal guardian of [the child] and was liable for damages for the defendant's injury in an amount not to exceed $5000." *Abreu* v. *Leone*, 291 Conn. 332, 334–35 n.1, 968 A.2d 385 (2009). As part of that action, the defendant served a notice of deposition and subpoena duces tecum on the plaintiff.

In response, the plaintiff commenced the present action in the Superior Court seeking to quash the aforementioned subpoena. He further requested a protective order from the deposition, alleging that § 17a-28 (b) prohibited him "from testifying to any matter regarding the status of the alleged foster child or his status relative to that child and from producing any information regarding that child." The department thereafter intervened as a party plaintiff in the action and submitted a brief in support of the plaintiff's position.

The court, *R. Robinson, J.*, heard argument on the matter on March 27 and April 24, 2006. At that hearing, the department insisted that § 17a-28 (b) prohibits disclosure of "any information pertaining to somebody who has received services by the department." Counsel for the defendant disagreed with that assertion, emphasizing that "[w]e are not seeking to depose the social worker, we are not seeking [to have the department] hand over volumes of records that they maintain in the regular course of business. We are seeking to depose the foster father and obtain any records that he may keep on his own separate from records maintained and kept by the department." The court issued its memorandum of decision on September 14, 2006. Interpreting § 17a-28 (b), the court held that "[t]he plain language of the subject statute provides that a record means information created or obtained in connection with the department's child protection activities or activities related to a child while in the care or custody of the department. The scope of the statute is much broader than suggested by the defendant. The defendant attempts to limit the scope of the statute to records that are actually created by and are in the possession of the department. The language of the statute clearly prohibits the movant from testify[ing] about, or producing copies of, documents in his possession which relate to a foster child because said documents were created or obtained in connection with activities related to a child while in the care or custody of the department." Accordingly, the court concluded that "[t]o the extent that the subpoena seeks records in violation of the provisions of § 17a-28 . . . the [defendant] may not request and the [plaintiff] may not furnish the prohibited information. However, in light of the fact that the [defendant] may seek other information that is not in violation of [§ 17a-28 (b)], the court will not prohibit the deposition from taking place."

In accordance with that ruling, a deposition of the plaintiff transpired on October 18, 2006. At that deposition, counsel disagreed about the scope of the court's decision. Upon the advice of his attorney and in light of the potential criminal and civil penalties for wrongful disclosure of protected information under § 17a-28 (b), the plaintiff declined to answer numerous questions.[1]

[1] The plaintiff declined to answer the following questions:

1. "[H]ave you seen any [department] documents pertaining to [the child]?"

2. "Do you know [the child]?"

3. "How do you know [the child]?"

4. "How long have you known [the child]?"

5. "What is the capacity of your relationship with [the child]?"

6. "Does [the child] currently reside with you?"

7. "Did [the child] reside with you on November 7, 2003?"

8. "Were you [the child's] foster parent on November 7, 2003?"

9. "If [the child] did reside with you on November 7, 2003, how long prior to that date did he reside with you?"

10. "How long after November 7, 2003, did [the child] reside with you?"

11. "Describe [the child's] personality."

12. "Did you ever see or hear [the child] acting violently towards anybody else?"

13. "Do you know if [the child] ever got in trouble at school?"

14. "If [the child] did get in trouble at school, what kind of trouble did he get into?"

15. "What happened in any of the instances where [the child] may have gotten in trouble at school?"

16. "Do you know the names of the parents or guardians of any of [the child's] friends or associates?"

17. "If so, what were their names?"

18. "And do you know any of their addresses or [tele]phone numbers?"

19. "Do you know if [the child] ever had any physical altercations with either of them, being his friends, or anyone else other than [the defendant], on or before November 7, 2003?"

20. "If the answer to that preceding [question] is in the affirmative, please discuss. Tell me the details of what happened."

21. "Based on your knowledge and relationship with [the child], would you agree that he has assaultive tendencies?"

22. "If your answer to the preceding question was in the affirmative, why do you believe so? If it was in the negative, why don't you believe so?"

23. "If you believe that [the child] has assaultive tendenc[ies], why is that your belief?"

24. "If you do not believe he has an assaultive tendency, why don't you believe so?"

As to each question, counsel for the department and counsel for the plaintiff objected, stating that a response would violate § 17a-28 (b).

On November 15, 2006, the defendant filed with the Superior Court a motion for sanctions that sought an order compelling the plaintiff to answer the disputed questions and monetary damages. By motion filed January 4, 2007, the plaintiff objected to the defendant's motion and submitted his own request for sanctions. A hearing followed on February 5, 2007, at which counsel for the department argued that "§ 17a-28 (b) is absolute. . . . [A]ny information contained in those records cannot be disclosed. . . . [A]ny information contained on records from anyone who has ever received services from the [department] cannot be disclosed without that person's consent." Counsel for the defendant disagreed, stating that "the way I read § 17a-28 (b) is that it's a records statute. It's a records statute only. . . . [T]his is not a prolix statute to any extent. [I]t [indicates that] records maintained are confidential." Counsel further contended that testimony by the plaintiff regarding his observations of, and experiences with, the child is not barred by § 17a-28 (b), as it pertains to his "own knowledge." In response, counsel for the plaintiff maintained that "the only way [the plaintiff] could know anything about this child is because of his status [as a] foster parent. [That necessarily puts the plaintiff] in a position of having to answer that ultimate question, at his peril . . . ."

In its May 2, 2007 memorandum of decision, the court, *Pittman, J.*, recounted the events of the "contentious discovery dispute" at issue. The court then stated: "The major questions at issue are these:

"1. How do you know [the child]?

"2. How long have you known [the child]?

"3. What is the capacity of your relationship with [the child]?

"4. Does [the child] currently reside with you?

"5. Did [the child] reside with you on November 7, 2003, [and for how long]?

"6. Were you [the child's] foster parent on November 7, 2003?

"Then there were a series of questions asking the deponent to describe the child's personality, to describe any trouble into which the child got at school, and to divulge information about the child's interaction with friends or fellow students. Finally, the deponent was asked his lay opinion of whether the child had assaultive tendencies.

"It is this court's ruling that these questions about the status of the deponent as a foster parent and the observations and opinions of the deponent about the foster child are not ones that come under the confidentiality provisions of § 17a-28 (b). The court can locate no statute, state regulation or [department] protocol that prevents a foster parent from divulging the fact that he or she is a foster parent. The fact that a child's legal guardian is the state of Connecticut or that the child resides with a foster parent is not confidential under § 17a-28 (b).

"And patently, the *observations* of a witness are not given confidential status by this statute. While a foster parent's observations of a child's behavior may find their way into a [department] report, such observations may also find their way into a newspaper (hopefully, for good behavior) or into a lawsuit, like the one proposed to be commenced here.

"Section 17a-28 (b) protects the witness from disclosing information learned through [the department] about

the child's background, the circumstances under which the child came to be adjudicated a ward of the state and similar circumstances that relate to the child's placement, but not the fact of the placement itself. This is in accordance with the [September 14, 2006 ruling] in this case, and it governs future discovery from this deponent.

"Questions 1 through 6 above are ones which the [plaintiff] must answer. Further questions about the deponent's observations, if any, of the child, or questions about the deponent's opinions must be answered, provided the answers are based on personal knowledge and observation of the child.

"The court declines to enter sanctions against the deponent or any counsel at this time but retains jurisdiction to do so should further discovery in accordance with this ruling be obstructed." (Emphasis in original; internal quotation marks omitted.)

The department thereafter filed a motion to reargue, which the court denied, and the department filed this appeal.[2]

The department claims that the judgment of the trial court compelling the plaintiff to answer the aforementioned deposition questions runs afoul of § 17a-28, which, it maintains, proscribes the disclosure of information created or obtained in connection with the department's child protection activities or activities

---

[2] After commencement of the present appeal, this court held a hearing on whether the appeal should be dismissed for lack of a final judgment. We subsequently dismissed the appeal. The department appealed from that determination to our Supreme Court, which held that the trial court's order compelling the plaintiff to answer the disputed questions terminated a separate and distinct proceeding and thus constituted an appealable interlocutory order. *Abreu* v. *Leone*, supra, 291 Conn. 349. Accordingly, the Supreme Court reversed the judgment of this court and remanded the matter for our consideration of the merits of the department's appeal. Id., 350.

related to a child while in the care or custody of the department. We agree.

We begin by noting what is not in dispute. The defendant originally sought to "obtain any records that [the plaintiff kept] on his own separate from records maintained and kept by the department." In its September 14, 2006 memorandum of decision, the court rejected that request, holding that "[t]he plain language of the subject statute provides that a record means information created or obtained in connection with the department's child protection activities or activities related to a child while in the care or custody of the department. The scope of the statute is much broader than suggested by the defendant. The defendant attempts to limit the scope of the statute to records that are actually created by and are in the possession of the department. The language of the statute clearly prohibits the movant from testify[ing] about, or producing copies of, documents in his possession which relate to a foster child because said documents were created or obtained in connection with activities related to a child while in the care or custody of the department. To the extent that the subpoena seeks records in violation of the provisions of § 17a-28 . . . the [defendant] may not request and the [plaintiff] may not furnish the prohibited information." That determination is not at issue in this appeal.

The defendant frames the issue before us as one involving the "personal observations and opinions" of a foster parent and the corresponding permissibility of testimony as to that "personal knowledge." That depiction is disingenuous, as the question central to the plaintiff's deposition was whether the child was a ward of the state. At that deposition, the defendant inquired as to how the plaintiff knew the child, the "capacity" of his relationship with the child and whether the plaintiff was the child's "foster parent on November 7, 2003."

Such questions plainly involve more than "personal observations and opinions."

The defendant's exhortations aside, we frame the issue as thus: May a foster parent, in a civil proceeding, be compelled to testify as to the nature of his relationship with a particular foster child, as well as his observations thereof, consistent with the mandate of § 17a-28? We answer that query in the negative.

Proper interpretation of § 17a-28 presents an issue of statutory construction, which, as a question of law, is subject to plenary review. *Middlebury* v. *Dept. of Environmental Protection*, 283 Conn. 156, 166, 927 A.2d 793 (2007). "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply." (Internal quotation marks omitted.) *Renaissance Management Co.* v. *Connecticut Housing Finance Authority*, 281 Conn. 227, 231, 915 A.2d 290 (2007). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Fairchild*

*Heights, Inc.* v. *Amaro*, 293 Conn. 1, 8–9, 976 A.2d 668 (2009).

Accordingly, our interpretation of § 17a-28 begins with an examination of the pertinent language of the statute.[3] General Statutes (Rev. to 2005) § 17a-28 (b) provides: "Notwithstanding the provisions of section 1-210, 1-211 or 1-213, records maintained by the department shall be confidential and shall not be disclosed. Such records of any person may only be disclosed, in whole or in part, to any individual, agency, corporation or organization with the consent of the person or as provided in this section. Any unauthorized disclosure shall be punishable by a fine of not more than one thousand dollars or imprisonment for not more than one year, or both."[4] General Statutes (Rev. to 2005) § 17a-28 (a) (5) defines the term " '[r]ecords' " as "information created or obtained in connection with the department's child protection activities or activities related to a child while in the care or custody of the department, including information in the registry of reports to be maintained by the commissioner pursuant to section 17a-101k, provided records which are not created by the department are not subject to disclosure, except as provided pursuant to subsection (f), (*l*) or (n) of this section . . . ." Read in tandem with that statutory definition, § 17a-28 (b) plainly prohibits the disclosure of information created or obtained in connection with the department's child protection activities or activities related to a child while in the care or custody of the department.

---

[3] The parties agree that § 17a-28 (b) is unambiguous, albeit for differing reasons. In their appellate briefs, the department and the defendant analyze the issue before us in terms of the statute's plain meaning.

[4] We note that § 17a-28 (b) was amended by No. 09-185, § 1, of the 2009 Public Acts, effective October 1, 2009. That amendment made certain changes to the statute that are not relevant to this appeal. For clarity, we refer to the 2005 revision of the statute, which was in effect at the time the matter at issue arose.

Significantly, the statute provides that such information "shall not be disclosed . . . ." General Statutes (Rev. to 2005) § 17a-28 (b). That broad mandate applies without regard to the particular status of the disclosing party, be it a department worker or foster parent. As our Supreme Court has observed, § 17a-28 "constitutes a broad legislative declaration of confidentiality." *State* v. *Kulmac*, 230 Conn. 43, 57, 644 A.2d 887 (1994). Just as the confidentiality of a psychiatric patient's identity is mandated by statute to shield the patient from the "stigma [that] may attach to one who seeks psychiatric care," as well as the accompanying "embarrassment, harassment or discrimination" that may follow; *Falco* v. *Institute of Living*, 254 Conn. 321, 329, 757 A.2d 571 (2000); the confidentiality of matters involving a child while in the care or custody of the department is required by § 17a-28 to protect that child from "the embarrassment, stigmatization and emotional harm that can result from the mere disclosure that he or she is under the department's care."[5] *Abreu* v. *Leone*, supra, 291 Conn. 348. The gravity of those dangers is indicated by our General Assembly's decision to impose criminal sanctions for violations of § 17a-28 (b).

The defendant nevertheless asks us to interpret the broad legislative declaration of § 17a-28 in a more narrow fashion. She maintains that the trial court properly exempted the "observations and opinions of the plaintiff about the foster child" from the confidentiality requirements contained therein. For multiple reasons, we are troubled by that assertion.

---

[5] Neither party has addressed the possibility of pursuing the present action under pseudonym as a means of protecting the child's identity and maintaining the confidentiality required by § 17a-28, which conceivably could satisfy the interests of both the defendant and the department in the present case. See, e.g., *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, 254 Conn. 387, 389 n.2, 757 A.2d 1074 (2000).

First and foremost, the court ordered the plaintiff to answer certain questions pertaining not to his "observations" or "opinions" but, rather, to the legal status of the child and the plaintiff's relationship to him. The defendant's inquiries as to how the plaintiff knew the child, the "capacity" of his relationship with the child and whether the plaintiff was the child's "foster parent on November 7, 2003" all implicate the child's identity as a ward of the state—a most substantial fact sought to be kept confidential by the legislature in enacting § 17a-28. In its memorandum of decision, the court concluded that "[t]he fact that a child's legal guardian is the state of Connecticut or that the child resides with a foster parent is not confidential under § 17a-28 (b)." That determination is untenable, as the fact that a child's legal guardian is the state of Connecticut or that the child resides with a foster parent is the quintessence of "information created or obtained in connection with the department's child protection activities or activities related to a child while in the care or custody of the department . . . ." General Statutes (Rev. to 2005) § 17a-28 (a) (5).

Second, we note that § 17a-28 contains detailed exceptions to the proscription of disclosure of information created or obtained in connection with the department's child protection activities or activities related to a child while in the care or custody of the department. See General Statutes (Rev. to 2005) § 17a-28 (c) et seq. Section 17a-28 contains no exception regarding the "personal observations and opinions" of a foster parent, nor one permitting the disclosure by a foster parent of information created or obtained in connection with the department's child protection activities or activities related to a child while in the care or custody of the department. As our Supreme Court repeatedly has stated, "[w]e have long held that . . . exceptions to statutes are to be strictly construed with doubts

resolved in favor of the general rule rather than the exception . . . . [W]here express exceptions are made, the legal presumption is that the legislature did not intend to save other cases from the operation of the statute." (Internal quotation marks omitted.) *Falco* v. *Institute of Living*, supra, 254 Conn. 330. That precedent compels the conclusion that § 17a-28 does not except a foster parent's testimony as to "general observations and opinions" regarding a child in the care or custody of the department from the confidentiality mandate contained therein. To the extent that, in resolving the present controversy, the trial court articulated such an exception, it incorrectly ventured into a province exclusive to the legislature.[6] See, e.g., *Genesky* v. *East Lyme*, 275 Conn. 246, 268, 881 A.2d 114 (2005) (Connecticut courts cannot read into legislation provisions that clearly are not contained therein); *Glastonbury Co.* v. *Gillies*, 209 Conn. 175, 181, 550 A.2d 8 (1988) ("[I]t is not the province of a court to supply what the legislature chose to omit. The legislature is supreme in the area of legislation, and courts must apply statutory enactments according to their plain terms." [Internal quotation marks omitted.]); *Doncourt* v. *Danaher*, 126 Conn. 678, 681, 13 A.2d 868 (1940) ("[i]f exceptions are to be made, it is for the [l]egislature to determine them and define their limitations"). Had the General Assembly intended to except a foster parent's testimony concerning a child in the care or custody of the department from the confidentiality mandate of § 17a-28, we must presume that it

---

[6] The court's determination also confounded other decisions of the Superior Court. As one judge earlier had observed, § 17a-28 "contains no exception . . . providing generally for the disclosure of information in [department] files to the court or the parties in a civil action. . . . When raised in a civil context . . . trial courts have uniformly refused to order disclosure of [department] records, citing the lack of statutory or case law authority to order the disclosure." (Citation omitted; internal quotation marks omitted.) *Losacano* v. *Plainfield*, Superior Court, judicial district of Windham at Putnam, Docket No. CV-01-0067834-S (February 11, 2003) (34 Conn. L. Rptr. 174, 176).

would have said so expressly. See *Southwick at Milford Condominium Assn., Inc.* v. *523 Wheelers Farm Road, Milford, LLC*, 294 Conn. 311, 320, 984 A.2d 676 (2009).

The defendant's reliance on *People* v. *Espinoza*, 95 Cal. App. 4th 1287, 116 Cal. Rptr. 2d 700, review denied, 2002 Cal. LEXIS 3308 (May 15, 2002), in support of her interpretation of § 17a-28 is unavailing. That California decision considered the admissibility of testimony by a foster mother regarding her observations of a foster child under California Welfare and Institutions Code § 827. As the court explained, § 827 "restricts those who may inspect a juvenile case file. It provides that, [f]or purposes of this section, a juvenile case file means a petition filed in any juvenile court proceeding, reports of the probation officer, and all other documents filed in that case or made available to the probation officer in making his or her report, or to the judge, referee, or other hearing officer, and thereafter retained by the probation officer, judge, referee, or other hearing officer." (Internal quotation marks omitted.) Id., 1314. The California Court of Appeals in *Espinoza* held that the foster mother's proposed testimony "would not have amounted to the disclosure of a 'juvenile [dependency] case file' or of 'information related to the contents of' a juvenile dependency case file and therefore did not come within [§] 827, subdivision (a) (3)'s requirement of a court order authorizing disclosure of such a file or information." Id., 1315.

That interpretation of California law sheds little light on the issue before us. The defendant has not discussed § 827 in any manner, including whether any similarity to § 17a-28 exists. That California statute concerns a restriction on access to juvenile court records, whereas § 17a-28 requires information created or obtained in connection with the department's child protection activities or activities related to a child while in the care or custody of the department to be kept confidential.

*Espinosa* further is distinguishable in that it involved a criminal proceeding, which implicates constitutional concerns not present in the case before us. See, e.g., *State* v. *George J.*, 280 Conn. 551, 599, 910 A.2d 931 (2006), cert. denied, 549 U.S. 1326, 127 S. Ct. 1919, 167 L. Ed. 2d 573 (2007); *State* v. *McClelland*, 113 Conn. App. 142, 160, 965 A.2d 586, cert. denied, 291 Conn. 912, 969 A.2d 176 (2009).

We likewise find the defendant's discussion of *State* v. *Morowitz*, 200 Conn. 440, 442, 512 A.2d 175 (1986), unpersuasive. That criminal case concerned General Statutes § 54-142a, which requires the erasure of certain paper records—police, court and prosecution records regarding dismissed charges. At issue in *Morowitz* was the permissibility of testimony by a victim whom the defendant had sexually assaulted prior to the incident giving rise to the case at issue. Because the charges relating thereto were dismissed following the defendant's completion of accelerated rehabilitation, he maintained that § 54-142a precluded the victim's testimony. Id., 447–48. Our Supreme Court read that statute narrowly, emphasizing that "the purpose of the erasure statute . . . is to protect innocent persons from the harmful consequences of a *criminal charge* which is subsequently dismissed." (Emphasis in original; internal quotation marks omitted.) Id., 451. The court continued: "The statute does not and cannot insulate him from the consequences of his prior *actions*. Although the records of the defendant's prior prosecution were erased, the prior victim's memory of the assault remained. Because the disputed testimony was based on personal knowledge independent of the erased records, § 54-142a did not bar its admission." (Emphasis in original.) Id.

By contrast, our Supreme Court has stated that § 17a-28 embodies "a broad legislative declaration of confidentiality"; *State* v. *Kulmac*, supra, 230 Conn. 57; the

aim of which is the protection of foster children from embarrassment, stigmatization and emotional harm. *Abreu* v. *Leone*, supra, 291 Conn. 348. The plaintiff's testimony regarding the child in the present case is inextricably linked to his participation in the department's activities related to a child while in the care or custody of the department. In addition, "records," as that term is used in § 17a-28, has a far more expansive meaning than that at issue in *Morowitz*.

Also unconvincing is the defendant's contention that testimony by the plaintiff arising from his "personal knowledge" escapes the confidentiality mandate of § 17a-28. That semantical exercise is undercut by the fact that the personal knowledge that the plaintiff possessed concerning the child resulted from his participation in activities related to a child while in the care or custody of the department. As a foster parent, the plaintiff is "a partner and integral part of the child welfare system" who "play[s] a key role in the system of providing services to children who must live away from their family of origin when that family cannot provide a positive environment or meet the special needs of the children." (Internal quotation marks omitted.) *Abreu* v. *Leone*, supra, 291 Conn. 347–48. The plaintiff is subject to numerous department regulations, which require him, inter alia, to "comply with the treatment plan for the child and work cooperatively with the department . . . in all matters pertaining to the child's welfare"; Regs., Conn. State Agencies § 17a-145-149 (a); and to maintain "all documentation as required by the department . . . ." Regs., Conn. State Agencies § 17a-145-151 (4). Such duties serve to "enable the commissioner to perform his duty regarding children under his care." *In re Barbara J.*, 215 Conn. 31, 42, 574 A.2d 203 (1990).

In furtherance of that effort, department policy mandates a partnership between the plaintiff and the department. The department policy manual provides that

"[t]he foster parents and child's [s]ocial [w]orker are partners in carrying out the plans of the treatment team so that the child receives the full spectrum of appropriate services. . . . Foster parents are part of the child's treatment team . . . . The foster parent's perspective on the child's adjustment to daily life is critical to the development and review of the service plan." Dept. of Children and Families Policy Manual § 36-55-1.5, pp. 1–2. The extent of that partnership is evinced by the fact that foster parents are "employees" of the state with respect to the state's duty to defend and to indemnify. *Hunte* v. *Blumenthal*, 238 Conn. 146, 167, 680 A.2d 1231 (1996).

Under Connecticut law, the commissioner of the department, and not the foster parent, is designated as the guardian of a child placed in foster care. General Statutes § 46b-129 (j). As such, the department possesses the authority to control foster parents in the discharge of their duties. *Hunte* v. *Blumenthal*, supra, 238 Conn. 154–55. Consistent with the mandate of § 17a-28 (b), department policy compels a foster parent to "maintain confidentiality in all matters pertaining to the child . . . ." Dept. of Children and Families, supra, § 36-55-1.5, p. 4. In light of the foregoing, we find persuasive the department's argument that "a foster parent's obligation to maintain the confidentiality of information related to a child in his or her care is no less than that of a [department] social worker."

The plain language of General Statutes (Rev. to 2005) § 17a-28 (a) (5) indicates that the term " '[r]ecords' " includes information *"obtained* in connection with the department's child protection activities or activities related to a child while in the care or custody of the department . . . ." (Emphasis added.) Any personal knowledge held by the plaintiff regarding the child, including observations and opinions thereof, necessarily was obtained as a result of his participation in the

department's child protection activities or activities related to a child while in the care or custody of the department. The term "records," as used in § 17a-28, thus encompasses the plaintiff's personal knowledge of the child in the present case.

We similarly discount the defendant's contention that the plaintiff's observations and opinions of the child are not records maintained by the department. "Maintain" is not defined in § 17a-28 but is generally defined as "to keep in an existing state: preserve from failure or decline." Merriam-Webster's Collegiate Dictionary (9th Ed. 1983). Any observations and opinions of the child to which the plaintiff potentially could testify a fortiori is information that has been kept in an existing state.

The defendant quarrels with that point, insisting that such information is maintained not by the department, but by the plaintiff in his individual capacity. For three reasons, we reject that allegation. First, it is undisputed that the plaintiff is a partner of the department and a participant in its child protection efforts. Various requirements are imposed on his involvement therein, including the responsibility to observe the child and to share those observations with the department. The plaintiff further is obligated to keep confidential all matters pertaining to the child. Indeed, the department exercises control over foster parents in the discharge of their duties. *Hunte* v. *Blumenthal,* supra, 238 Conn. 154–55. Whether termed partner, agent or employee, the plaintiff, in participating in the care of the child, acts as an extension of the department.

Second, a practical problem abounds with the defendant's interpretation that § 17a-28 (b) applies only to records that "are kept in the department's log books and file cabinets," as the defendant stated at oral argument, which she contends do not encompass the plaintiff's

observations and opinions. It is undisputed that the department exercises control over foster parents in the discharge of their duties, including the responsibility to "comply with the treatment plan for the child"; Regs., Conn. State Agencies § 17a-145-149 (a); to maintain "all documentation as required by the department"; Regs., Conn. State Agencies § 17a-145-151 (4); and to regularly "[share] information" regarding the child with the department. Dept. of Children and Families, supra, §§ 36-55-1.3 and 36-55-1.5. As a result, the defendant's interpretation of § 17a-28 creates the unworkable situation wherein the determination of whether a particular piece of information related to a child in the care or custody of the department is, in fact, contained in the records possessed by the department must entail an examination of department records, which the defendant concedes are confidential under § 17a-28 (b). That interpretation presents a troubling " 'chicken or the egg' scenario." *C. R. Klewin Northeast, LLC* v. *Bridgeport*, 282 Conn. 54, 77, 919 A.2d 1002 (2007). By way of example, consider the deposition question on the plaintiff's "opinion of whether the child had assaultive tendencies." Given the plaintiff's obligations to the department, that opinion may well have been both communicated to the department and memorialized in some manner by the department, be it by written document or other form. Only by examining department records pertaining to the child could the defendant determine whether the opinion was contained therein, which all parties agree is not permitted under § 17a-28.

That scenario places the plaintiff in a harrowing predicament. Were he compelled to testify as to his personal observations of the child, as well as to the six questions that the court ordered him to answer, the plaintiff would face potential criminal and civil penalties for wrongful disclosure of protected information under § 17a-28 (b), despite the possibility that he was

unaware that such information was contained in the "log books and file cabinets" maintained by the department. We do not believe that the legislature intended to so bind foster parents. Such a scenario "would discourage participation by otherwise willing foster parents and thus undermine the goals of that system." *Abreu* v. *Leone*, supra, 291 Conn. 348.

Third, to read § 17a-28 (b) in such fashion as that advanced by the defendant serves to undermine the primary purpose of the statute—namely, to preserve the confidentiality of information in connection with the department's child protection activities or activities related to a child while in the care or custody of the department. See *State* v. *Kulmac*, supra, 230 Conn. 57. "In the interpretation of a statute, a radical departure from an established policy cannot be implied. It must be expressed in unequivocal language." (Internal quotation marks omitted.) *Fredette* v. *Connecticut Air National Guard*, 283 Conn. 813, 822, 930 A.2d 666 (2007). Section 17a-28 (b) lacks such unequivocal language.

We also are mindful that "[i]n construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result." (Internal quotation marks omitted.) *King* v. *Board of Education*, 203 Conn. 324, 332–33, 524 A.2d 1131 (1987). The aim of § 17a-28 is to prevent disclosure of information concerning a child in the care or custody of the department. It is a legislative attempt to shield that child from "the embarrassment, stigmatization and emotional harm that can result from the mere disclosure that he or she is under the department's care." *Abreu* v. *Leone*, supra, 291 Conn. 348. It would be incongruous to interpret § 17a-28 to permit a foster parent, a vital participant in the department's child protection efforts, to testify as to the legal status of a foster child and his observations and opinions thereof, while forbidding such testimony by a department social

worker. Interpreting § 17a-28 to permit a foster parent to so testify is inconsistent with the confidentiality mandate governing "information . . . in connection with the department's child protection activities or activities related to a child while in the care or custody of the department . . . ." General Statutes (Rev. 2005) § 17a-28 (a) (5). A commonsense reading of the language of § 17a-28 persuades us that the legislature did not intend to permit such testimony by a foster parent.

In sum, we decline the defendant's request to read § 17a-28 in a narrow manner. The statute embodies "a broad legislative declaration of confidentiality." *State* v. *Kulmac*, supra, 230 Conn. 57. We conclude that the disclosure of information created or obtained in connection with the department's child protection activities or activities related to a child while in the care or custody of the department is permitted only in certain instances specified by statute, none of which are implicated in the present case.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.